■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH CONNOR, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Bianchi, J.), rendered February 19, 1985, convicting him of attempted robbery in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered; no questions of fact have been raised or considered.

On January 3, 1985, as the trial of the defendant was about to begin, the attorney assigned to represent him brought to the attention of the court that the defendant was dissatisfied with her services and that he wanted another attorney. The defendant was permitted to address the court, and asserted that he was "personally not satisfied with [his attorney's] performance". The court ruled that the defendant would nevertheless have to proceed to trial, and that he would be represented by the counsel assigned him. The court and the defendant then engaged in the following exchange:

THE COURT: Then I'll tell you this. You're going to go to trial with this lawyer.

THE DEFENDANT: No, I'm not.

THE COURT: Oh, yes you are. And if you don't keep quiet and if you don't behave, you'll go inside and we'll conduct the trial without you.

How do you like that?

THE DEFENDANT: Well, I think I make moves on that, too.

THE COURT: You make all the moves you want, just sit down, that's the only move you're going to make.

That's the move you're going to make. You sit down there and we're going to conduct this trial, and you're going to be tried on this indictment, and that's your lawyer.

Following a *Sandoval* hearing, the defendant again requested that a new attorney be assigned for him. The court again denied this request. After a recess, and before the jury had entered the courtroom, the defendant addressed the court as follows:

THE DEFENDANT: My counsel isn't here.

THE CLERK: Your counsel is not here?

THE DEFENDANT: No.

THE COURT: What do you mean by that Mr. Connor?

THE DEFENDANT: My counsel isn't here.

THE COURT: I don't understand what you mean?

THE DEFENDANT: I mean my counsel isn't here.

THE COURT: Do you have a counsel?

THE DEFENDANT: No.

THE COURT: Okay, you have a counsel, that's [your attorney].

THE DEFENDANT: No, I don't.

THE COURT: —that's [your attorney].

THE DEFENDANT: I'm being forced to trial. I'd like the record to reflect that I'm being forced to trial with a counsel that I don't want representing me.

THE COURT: Right, we have already covered that.

THE DEFENDANT: And I'd like the jury to know that also.

THE COURT: No, the jury will not know it.

THE DEFENDANT: All right.

THE COURT: If you open your mouth, you go inside and we will have a case without you.

THE DEFENDANT: Okay.

THE COURT: That's in the record too, so that you'll be protected.

The court then delivered its preliminary instructions and the prosecutor delivered his opening remarks. As the defendant's assigned counsel was about to make an opening statement, the defendant stated within the presence of the jury, the following:

THE DEFENDANT: This is not my lawyer. They're forcing me to go to trial with this lawyer. I don't want this lawyer defending me.

I just want you to know they're forcing me to go to trial with this lawyer, which is not my lawyer.

THE COURT: All right, take him inside.

Ladies and gentlemen, you will disregard what this man said.

THE DEFENDANT: That's not my lawyer.

THE COURT: You will disregard what this man says. He has been assigned a lawyer—

THE DEFENDANT: That's not my lawyer.

THE COURT: —by the People of the State of New York since August, since August. He has not made any attempt at all, at one point he made an attempt to ask for replacement and that was last month and then withdrew his application.

He has done nothing but try to delay the trial of this case. I am not going to permit him to delay it in any way, shape, manner, or form.

He's been told that time and time again.

At some point during the foregoing exchange, the defendant was apparently removed from the courtroom.

After a side bar conference, the court continued to address the jury as follows:

THE COURT: This morning he took part in the selection of the jury. He consulted with his counsel at the table. He has gone through the entire thing and now again says that he doesn't want her as his lawyer.

He has absolutely, the Court has inquired in depth while you were out for a period of over an hour, I inquired in depth as to the reasons why this defendant did not find [his attorney] good enough to be his lawyer, competent enough. He had no reason whatsoever.

He couldn't give any reason except to say, I feel that she's not representing me. I feel unsatisfied. He could not give me any reasons.

She made a full investigation of this matter from the time she was assigned to this matter and she has satisfied me that she did that.

The District Attorney has convinced me with the papers that he has given her that she has made a full discovery of whatever has to be discovered in this case so as to help him.

He has refused to talk to her. She has called him at least twice a week for the last few months on the telephone at Riker's Island where he's been incarcerated in lieu of bail, instead of making bail, he has not made bail.

Now, none of this is to prejudice you in this case. Understand that. Does everybody understand that?

THE JURORS: Yes.

The court then admonished the jury that the only issue for them to resolve was whether the defendant was guilty of the charge contained in the indictment. However, the court repeated to the jury that the defendant "has no funds to retain his own counsel", and again commented on the fact that the defendant had been incarcerated pending trial.

The defense counsel then requested a mistrial based on the fact that the court had indicated to the jury that the defendant was being represented by assigned counsel, and that he had been incarcerated prior to trial. This motion was denied.

The trial then proceeded in the absence of the defendant.

On January 8, 1985, as trial was resuming, the defendant's counsel indicated for the record that the defendant had refused to promise that he would "behave himself". The court had offered to readmit the defendant upon the condition that he would make such a promise. The court stated that "[h]e has every opportunity to come out if he wants to provided he behaves". The testimony continued on January 8 in the absence of the defendant.

On January 9, the attorneys delivered their summations. The record indicates that the defendant was present at this time. The defendant apparently remained present for the remainder of that day, through the jury charge, and until the verdict was announced.

The defendant did not receive a fair trial, and the judgment of conviction must therefore be reversed. We recognize, of course, that a defendant who engages in disruptive behavior during a trial may be held to have, in effect, waived his right to be present (see, Illinois v Allen, 397 US 337, reh denied 398 US 915; People v Johnson, 37 NY2d 778; People v Palermo, 32 NY2d 222; People v Trippett, 121 AD2d 485, lv denied 68 NY2d 774; People v Harris, 115 AD2d 619). Assuming that the defendant's conduct in the present case constituted such a waiver, so that the court's decision to proceed with the trial in the defendant's absence may be justified, we nevertheless conclude that several of the court's actions and statements in this regard were necessarily prejudicial.

First, upon the defendant's outburst, the trial court should have directed that the jury be escorted from the courtroom. Then, the defendant could have been admonished in a more elaborate way as to potential consequences which might result from his continued disruptive behavior. Should the defendant have again refused to behave, he could then have been removed from the courtroom outside the presence of the jury.

Second, and more importantly, there was no justification for the remarks made by the trial court to the jury immediately after the defendant's ejection. The court had no valid reason for informing the jury that the defendant had been and remained incarcerated on Rikers Island pending the completion of his trial. Such information could easily lead the jury to speculate that defendant was deemed to be too dangerous to remain at liberty pending trial, or that he might have a prior criminal record. The jury's knowledge that the defendant had been incarcerated undermines the presumption of innocence *(see generally, Estelle v Williams,* 425 US 501, *reh denied* 426 US 954; *People v Roman,* 35 NY2d 978 [violation of due process to force defendant to appear at trial in prison clothing]). Similarly, it was unnecessary for the court, as if in response to the defendant's outburst, to inform the jury that the State had assigned an attorney to represent the defendant because of his indigence. It would have been sufficient to instruct the jury to blot the entire incident out of their minds, and to instruct them that the defense counsel was in fact the defendant's attorney and that they should not speculate as to why the defendant might have claimed otherwise.

In light of our determination that the defendant was deprived of a fair trial as a result of the court's comments to the jury, we need not address the remaining issues advanced on appeal. Mangano, J. P., Bracken, Kunzeman and Eiber, JJ., concur.