[645 NYS2d 884]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROD-
NEY THOMPSON, Appellant.

Second Department, August 5, 1996

APPEARANCES OF COUNSEL

*Andrew M. Friedman,* Richmond Hill, for appellant.

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Steven J. Chananie* and *Johnnette Traill* of counsel), for respondent.

## OPINION OF THE COURT

HART, J.

The issue on this appeal is whether a Judge, having become physically disabled after the commencement of the presentation of evidence at a criminal trial, may be replaced by another Judge of coordinate jurisdiction. The defendant contends that such a replacement constitutes a denial of due process. We hold that, in the absence of demonstrable prejudice, the substitution of an incapacitated Trial Judge in a criminal jury trial, even after the presentation of evidence has begun, by a Judge who has reviewed and become thoroughly familiar with the trial record and who adheres to the rulings of the original Judge, is constitutionally permissible.

According to the People's evidence, the defendant abducted the 19-year-old female victim and disabled her by stabbing her in the leg. He then forced her to walk with her eyes closed to his apartment, where he made her undress. He blindfolded her and tied her to a bed, where she remained for the next 20 hours, during which time she was repeatedly raped and sodomized by the defendant and his neighbor, to whom the defendant had given the victim as a "birthday present". When finally released by the defendant, the victim went to the police and assisted them in finding the defendant's apartment by locating a church she had seen through a window when her blindfold slipped while the defendant was sleeping. After she identified the defendant in a lineup, he was arrested. The defendant was indicted for kidnapping in the first degree, seven counts of rape in the first degree, and other crimes arising out of the abduction and sexual assault of the victim.

A jury trial was commenced in Supreme Court, Queens County, on January 14, 1993. The People's case was nearing its

conclusion on Thursday, January 28, 1993. No testimony was taken on Friday due to the defendant's religious beliefs. On Monday, February 1, 1993, when the parties returned to court, they were advised that the original Trial Judge (Clabby, J.), had undergone emergency surgery and that he would be disabled for two months. Prior to his incapacitation, Justice Clabby had ruled on all motions made during the period that he presided over the proceedings.

The case was then assigned to a substitute Judge (Fisher, J.) to preside over the trial to its conclusion. After this substitution took place, the defense counsel moved for a mistrial and requested that Justice Fisher recuse himself from deciding that motion based on an informal discussion he previously had with the defense counsel regarding midtrial substitutions. The defense counsel also stated he had no objection to Justice Fisher presiding over the continuation of the trial in the event the motion for a mistrial was denied. Justice Fisher reserved decision, ruling that both applications could be addressed in a postverdict motion.

Upon the continuance of the trial on Thursday, February 4, 1993, the People rested without offering any additional evidence. The case was then adjourned to the following Monday, at which time the defendant was to begin his defense. The trial was delayed one additional day due to the illness of a juror and, as a result, testimony resumed on February 9, 1993. Between receiving the assignment to preside over the continuance of the trial and the actual recommencement of testimony on February 9, 1993, Justice Fisher received and read the transcript of all the prior proceedings in the case. On February 9, 1993, the defense rested. On February 11, 1993, the jury returned its verdict against the defendant.

The trial court denied the defendant's posttrial motions for recusal and to set aside the verdict. In a comprehensive review of the applicable precedents, the court below concluded that it was proper for a substituted Judge to complete the defendant's trial (see, People v Thompson, 158 Misc 2d 397). On appeal, the defendant asserts that the court below erred in failing to grant his motion for a mistrial, noting, inter alia, that the original Judge had presided over a substantial portion of the trial and had made numerous evidentiary rulings.

At the outset, it must be emphasized that the defendant does not complain that either the incapacitated or substituted Judge engaged in any impermissible judicial conduct (see, e.g., Matter of Tracy C., 186 AD2d 250; People v Grant, 185 AD2d 896;

*People v Boyd,* 166 AD2d 659; *People v Jordan,* 138 AD2d 407; *People v Connor,* 137 AD2d 546).

Turning to the issue presented by this appeal, an understanding of the Trial Judge's mandate in a criminal jury trial is essential in determining when, if ever, a substitute Judge can preside over a criminal proceeding without impinging upon a defendant's rights to due process.

The Trial Judge's role in a criminal jury case is restricted by statute to questions of law. Factual review is reserved exclusively to the jury and, on appeal, to the Appellate Division. The Trial Judge neither has the duty nor the authority to evaluate witness credibility *(see, People v Bleakley,* 69 NY2d 490; *People v Carter,* 63 NY2d 530).

Other than contemporaneous rulings on the admissibility of evidence, the scope of review of a Judge presiding over a criminal jury trial is limited to the issue of legal sufficiency; to wit, the court must weigh the sufficiency of the evidence to determine whether the proof established each element of the crime or crimes charged and the defendant's commission thereof beyond a reasonable doubt (CPL 70.20). Stated somewhat differently, the Trial Judge must determine whether there is legally sufficient evidence, that is, competent evidence which, if accepted as true, would establish every element of the offense charged and the defendant's commission thereof, except that such evidence is not legally sufficient when corroboration required by law is absent (CPL 70.10 [1]).

Thus a substituted Judge in a criminal trial need only consider the evidence admitted by the incapacitated Judge in the context of a motion for a trial order of dismissal (CPL 290.10). In determining such a motion, the Judge does not rule based on an assessment of the quality or weight of the evidence, or upon the court's impression of the credibility of the witnesses *(see, People v Vasquez,* 142 AD2d 698; *Matter of Holtzman v Bonomo,* 93 AD2d 574).

While our Court has never passed on this issue, in view of the strict dichotomy in criminal cases between the responsibility of a Judge and the duty of a jury, we perceive nothing in Judiciary Law § 21 or any other statute which prohibits substitution for an incapacitated Judge in an ongoing criminal jury proceeding, provided the substituted Judge has reviewed and become thoroughly familiar with the trial record and does not decide or take part in deciding a question orally argued

outside of his or her presence[1] *(cf., United States v Sundstrom,* 489 F2d 859, *cert denied* 419 US 934). Indeed, rule 25 (a) of the Federal Rules of Criminal Procedure specifies that if during a trial, by "reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial". The various circuit courts that have addressed the issue have held that rule 25 passes constitutional muster *(see, United States v Mc-Callie,* 554 F2d 770; *United States ex rel. Fields v Fitzpatrick,* 548 F2d 105; *United States v Lewis,* 460 F2d 257; *United States v Bakewell,* 430 F2d 721, *cert denied* 400 US 964; *Rogers v United States,* 350 F2d 297). In addition, numerous other States have enacted statutes similar to rule 25 (a) of the Federal Rules of Criminal Procedure.[2]

We turn now to the particular due process claim asserted by the defendant. In essence, the defendant contends that a mid-trial change in the presiding Justice, without more, results in a denial of due process. We disagree.

While recognizing the judicial policy of this State "to facilitate the administration of justice [and] * * * to eliminate delay in the trial of criminal actions or costly retrial", a defendant's right to a fair trial clearly is paramount *(People v Lewis,* 71 AD2d 7, 12). Nonetheless, the United States and New York State Constitutions guarantee only that trials be fair, not that they be perfect *(see, People v Jean-Charles,* 122 AD2d 166). In

---

1. Judiciary Law § 21 provides that a nisi prius Judge shall not decide or take part in the decision on a question argued orally when he or she was not present. This prohibition has been applied in criminal, as well as civil, matters where the case is tried to a Judge and the substituted Judge is called upon to evaluate testimony not taken in his or her presence *(see, People v Cameron,* 194 AD2d 438, *Michel v Michel,* 31 AD2d 313; *People v Hooper,* 22 AD2d 1006). However, Judiciary Law § 21 simply is not relevant to this case inasmuch as the replacement Judge was never called upon to decide any motion made prior to his substitution.

2. *See,* Ala Rules Civ Pro, rule 63; Alaska Rules Crim Pro, rule 25; 17 Ariz Rev Stats, Rules Crim Pro, rule 19.5; Cal Penal Code § 1053; Colo Mun Ct Rules, rule 225; Del Super Ct Crim Pro Rules, rule 25; Fla Rules Crim Pro, rule 3.231; Ga Code § 15-1-9.3; Idaho Crim Rules, rule 25.1; Iowa Code Annot § 813.2, rule 18 (7) (b); Kan Stat Annot § 43-168; La Rev Stat Annot, tit 13, § 4209 (A); Md Rules of Pro, rule 4-361; Mass Rules Crim Pro, rule 38; Mich Ct Rules, rule 6.440; ND Rules Crim Pro, rule 25; Ohio Crim Rules, rule 25 (A); Tenn Rules Crim Pro, rule 25 (a); Vernon's Annot Tex Const, art V, § 11; Utah Rules Crim Pro, rule 29 (a); Vt Rules Crim Pro, rule 25; Va Code (1950) § 19.2-154; Wash Super Ct Crim Rules, rule 6.11; Wyo Rules Crim Pro, rule 25.

this regard, the quintessence of due process is the right of all parties to notice and a full and fair opportunity to exercise their legal rights and remedies (NY Const, art I, § 6; *see also,* 16A Am Jur 2d, Constitutional Law, § 812; *People v Goldswer,* 39 NY2d 656; *People v McLaughlin,* 150 NY 365). Thus, when the government invokes its powers against an individual, procedural due process requires fair dealings, adequate hearings, impartial decisions, as well as the vehicles by which to obtain them *(see, Morgenthau v Citisource, Inc.,* 68 NY2d 211; *People ex rel. Lesser v Hunt,* 171 Misc 640, *affd* 256 App Div 1048).

Unquestionably, a defendant has the constitutionally protected right to the supervision of a fair, impartial, and competent Judge throughout his proceedings *(see, People v Ahmed,* 66 NY2d 307; *People v Charleston,* 56 NY2d 886). It does not follow, however, that a fair trial can only be achieved by having the same individual preside over the entire case. Simply stated, there is no per se constitutional right to have the *same* Judge preside throughout a criminal defendant's trial. Indeed, taken to its logical extreme, the defendant's argument is premised on the ill-conceived notion that the Judge in a criminal jury trial has some duty to weigh credibility. It further implies that the personal proclivities or philosophy of the Trial Judge impacts on the trial. These contentions must be rejected because such judicial influence in a trial is impermissible and would lead to reversible error.

Upon our review of this record, we conclude that the defendant's due process rights were not violated by the substitution of Justice Fisher for Justice Clabby. The defendant fails to point to any purported inconsistent rulings, based either upon the law or the discretion of the Trial Judge, upon which this Court could predicate any support for the defendant's contention that substitution for the disabled Judge unfairly prejudiced him. Rather, the defendant flatly posits, without any support in the record, that he was deprived of the "internal consistency" that a single Judge brings to a trial. However, such an amorphous concept as the blanket need for consistency, without more, simply does not implicate due process concerns.

In sum, the defendant has proffered no legally or logically cognizable basis for concluding that he did not receive the fair trial to which he was constitutionally entitled.

We have reviewed the defendant's remaining contentions and find them to be without merit.

Accordingly, the judgment is affirmed.

ROSENBLATT, J. P., PIZZUTO and ALTMAN, JJ., concur.

Ordered that the judgment is affirmed.