OPINION OF THE COURT
Charles A. Posner, J.
In the midst of a bench trial, held before this court, the defendant moves, pursuant to Criminal Procedure Law § 290.10 (1) (a), for the extraordinary and rarely granted remedy of a trial order of dismissal at the close of the People’s case. The defendant is on trial for the sole count of attempted criminal possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [1]). The defendant contends that the People have failed to establish that he had dominion or control over a gun and ammunition seized at 1370 Ralph Avenue, Kings County, pursuant to a search warrant. Indeed this court finds that upon the review of all the competent evidence that the People have failed to establish any connection whatsoever of the defendant to the possession or attempted possession of a weapon.
The People have not established that the defendant is the owner of the stripclub/nightclub located at 1370 Ralph Avenue, nor have they established that the defendant was aware that a gun and ammunition were present in a safe located at 1370 Ralph Avenue. The People had previously given CPL 710.30 (1) (a) notice of intent to introduce several alleged statements of the defendant that he was the owner of the club and/or that he lived there. The People withdrew this notice during argument over whether the defendant was entitled to a previously-scheduled Huntley hearing. The People contended that those portions of his alleged statements which they intended to offer at trial identified him as the perpetrator. The Assistant District Attorney contended that
“[g]iven the fact that there was pedigree information taken from the defendant, so it does not require a Huntley hearing and the pedigree information saying that his home and business was 1370 Ralph Avenue again with the statement [sic], we will do a Huntley hearing but it does not add much to that.
*498 At this point, the People are willing to not do a Huntley hearing. We do not seek to introduce the statement made at the club by the Defendant. We will only introduce statements made by the defendant that are pedigree. That does not require a Huntley hearing. Therefore, at this point—
“the court: You are saying that pedigree information—
“the assistant district attorney: Stuff that was not stated at the club. We withdraw that statement notice. We will just bring the pedigree information based upon the arrest report. So, at this point, there is no need for a hearing. The People are ready to go forward with the trial.” (Transcript at 22, lines 8-26 [emphasis added].)
The defendant immediately replied that the case could not be established without the statements alleged in the section 710.30 (1) (a) notice and that permitting the element of ownership and dominion and control to be established by pedigree would be impermissible. This court agrees.
The People’s Case-in-Chief
The facts established by the People’s case are as follows.
Detective James Roulxe is an investigator with the Brooklyn South Narcotics Task Force, and in that capacity he investigates cases involving drugs and drug paraphernalia in the 67th Precinct. (Transcript of Roulxe at 26, lines 6-25.) Roulxe testified that he made an arrest of Dwight Halstead on or about March 28, 2002 inside a location at 1370 Ralph Avenue, in Kings County, which he believed was a stripclúb/bar. Roulxe testified that he was working with a field team that day. (Transcript of Roulxe at 28, lines 21-24.) Roulxe described the location as a “four bar area,” with a stage, a DJ area, a pool table, a dance area and alleged VIP seating area. (Transcript of Roulxe at 28, lines 25-26; at 29, lines 2-6.) Roulxe conceded that there were patrons present, but that the defendant, Dwight Halstead, was off to the side of the bar, standing to the right of the bar, “not behind the bar” (emphasis added). However, Roulxe offered that there was a bartender present, and that March 28, 2002 was the only occasion when he ever went to this stripclub/bar. (Transcript of Roulxe at 29, lines 9-17; at 30, lines 4-5; at 57, lines 17-22.)
Detective Roulxe testified that he had an opportunity to search the stripclub/bar. He testified that he searched an “of *499 fice” behind the bar. However, he did not recall if there was a sign on the door leading to the office (transcript of Roulxe at 30, lines 23-26; at 51, lines 11-12).
Detective Roulxe described the office that he searched as having “lots of TV screens, VCR’s, lots of documents, papers everywhere and videotapes.” However, he did not read any of the papers or documents, and he did not know if any of the documents or paperwork belonged to the defendant. (Transcript of Roulxe at 31, lines 2-4; at 51, lines 13-19; at 20-23.)
Detective Roulxe testified that he was the first person to “go into the safe” after it was opened. (Transcript of Roulxe at 32, lines 21-23.) Inside the safe, Roulxe found a black Dawoo 9 millimeter handgun which was loaded with nine rounds in the magazine but none in the chamber. (Transcript of Roulxe at 32, lines 24-25; at 33, lines 17-24; at 36, lines 2-7.)
Detective Roulxe testified that the defendant was arrested pursuant to a procedure which included getting information from the defendant. (Transcript of Roulxe at 41, lines 18-26.) However, Roulxe contended that he initially asked the defendant for this information at the scene of the search warrant execution and then, later, filled out an on-line booking report at the precinct which was based on that same information. This court later commented that this information, obtained on the scene, but merely written down at the precinct, was not pedigree and thus sustained the defendant’s objection to the admissibility of this information. (Transcript of Roulxe at 47, lines 7-18; at 48, lines 5-7, 14-26; at 49, lines 2-19.) (I shall discuss the exclusion of this evidence at a later point in this opinion.)
Sergeant James Perez is an investigator with the Brooklyn South Narcotics Task Force, and he supervises a group of narcotics investigators. (Transcript of Perez at 73, lines 3-12.) Perez testified that the building where the search was conducted had more than one office area, and that there were other security personnel working in that location when the search warrant was executed. (Transcript of Perez at 76, lines 3-8; at 79, lines 7-10.)
The People, in their affirmation in opposition to the instant motion, make only one contention of consequence, i.e., that “during cross, while the defense was asking the detective about a lease, he elicited the answer, T basically asked him if he was the owner and he said yes.’ (Cross, p. 13-14 [sic]). Defense made no motion to strike this statement, and it is not in evidence.”
*500 To the contrary, the prosecutor misreads the transcript and fails to complete the ensuing colloquy wherein the defendant’s counsel immediately renewed an objection that he had made to this statement on several prior occasions. (Transcript of Jerome, redirect at 69, lines 9-14.)
The People rested and the defendant’s counsel made an oral motion for dismissal which this court initially denied. No other testimony was elicited nor did the defense rest.
Upon the submission of this motion in writing, the People’s response, the transcript of the trial and the applicable law, this court now reverses itself and dismisses this information.
The Inadmissibility of the Purported Pedigree Information
The People have attempted to introduce a purported statement of ownership of the premises by the defendant. This statement was first elicited by a detective at the crime scene and later recorded at the precinct as pedigree information.
The issue is whether the information about the defendant’s ownership of the location was reasonably related to administrative concerns and thus pedigree, or whether the statement was elicited by a question that was likely to elicit an incriminating statement and therefore outside of the pedigree exception. The New York State Court of Appeals in People v Rodney (85 NY2d 289, 293 [1995]) has stated that
“[statements made in response to questions which are not directed solely to administrative concerns are subject to the requirements of CPL 710.30. Similarly, the People may not rely on the pedigree exception if the questions, though facially appropriate, are likely to elicit incriminating admissions because of the circumstances of the particular case (see, Pennsylvania v Muniz, 496 US [582], at 602, n 14 [1990], supra; Rhode Is. v Innis, 446 US 291, 301 [1980]; People v Rivera, 26 NY2d [304], at 309 [1970], supra).”
Therefore, this court denied the admission of the statement of ownership for which the People had withdrawn their notice pursuant to CPL 710.30.
The Trial Order of Dismissal
The dismissal of a charge is a drastic remedy that should rarely be invoked as the appropriate sanction for failure to preserve evidence. (People v Williams, 223 AD2d 491 [1st Dept *501 1996], lv denied 87 NY2d 1026 [1996], lv denied on reconsideration 88 NY2d 887 [1996], cert denied 519 US 952 [1996].)
The statute governing trial orders of dismissal, CPL 290.10 (1), authorizes this court to dismiss any count of an information only upon the ground that the trial evidence is not legally sufficient, and no power or authority is granted to dismiss any count on the basis that guilt has not been established beyond a reasonable doubt or for any other reason other than legal insufficiency. (People v Barnes, 178 AD2d 482 [2d Dept 1991], lv denied 79 NY2d 918; Holtzman v Bonomo, 93 AD2d 574 [2d Dept 1983]; cf. 34 NY Jur 2d, Criminal Law § 2425.)
A defense motion for a trial order of dismissal at the close of the People’s proof should be granted where the evidence on the charge is wholly circumstantial and, viewed in the light most favorable to the People, it cannot be inferred that evidence of the defendant’s criminal activity flowed naturally from the facts proved and excluded every reasonable hypothesis of innocence. (People v Betances, 145 AD2d 961 [4th Dept 1988]; 34 NY Jur 2d, supra.)
Professor Peter Preiser, in his Practice Commentaries to CPL 290.10 (McKinney’s Cons Laws of NY, Book 11A), notes that the motion must specifically identify the alleged omission in proof, and at the discretion of the court, the People may be permitted to reopen the proof and fill the gap. However, the People abandoned their only opportunity to link this defendant to the alleged crime when they withdrew their CPL 710.30 notice.
There being no lesser included charge to the sole count of attempted criminal possession of a weapon in the fourth degree, this court dismisses the count, and consequently the information.