■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAYMOND BRUN, Respondent. [872 NYS2d 188]—

Appeal by the People from an order of the County Court, Nassau County (Kase, J.), dated May 11, 2007, which granted the defendant's application pursuant to CPL 290.10 (1) to set aside a jury verdict convicting him of robbery in the first degree (three counts) under counts one, two, and three of the indictment, robbery in the second degree (three counts) under counts seven, eight, and nine, criminal use of a firearm in the first degree (two counts) under counts 10 and 11, and criminal facilitation in the fourth degree under count 12, on the ground that the verdict was not supported by legally sufficient evidence.

Ordered that the order is modified, on the law and the facts, by deleting the provisions thereof granting those branches of

the defendant's application which were to set aside the jury verdict convicting him of robbery in the first degree (three counts) under counts one, two, and three, robbery in the second degree (three counts), under counts seven, eight, and nine, criminal use of a firearm under count 10, and criminal facilitation in the fourth degree under count 12, and substituting therefor a provision denying those branches of the application; as so modified, the order is affirmed, the subject counts of the indictment and the verdict of guilt thereon are reinstated, and the matter is remitted to the County Court, Nassau County, for the imposition of sentence on those counts.

In deciding a motion pursuant to CPL 290.10 (1) to set aside a verdict of guilt, a trial court must limit its review solely to the legal sufficiency of the evidence, as defined in CPL 70.10 (1) (*see People v Dubrey,* 217 AD2d 706, 706-707 [1995]; *People v Vasquez,* 142 AD2d 698, 700 [1988]). The court must view the evidence in the light most favorable to the People (*see People v Contes,* 60 NY2d 620 [1983]), and all questions as to the quality or weight of the evidence should be deferred (*see People v Vasquez,* 142 AD2d 698, 700 [1988]).

Applying the foregoing standard, the evidence revealed, among other things, the following. On the evening of December 22, 2005, the defendant drove two men whom he knew, George Beamon and Brian Poole, from Queens to Freeport. The defendant was driving a white Nissan vehicle that belonged to his girlfriend. The defendant dropped the two men off in Freeport, where, shortly after midnight on December 23, 2005, Beamon and Poole committed an armed robbery of a Chinese take-out restaurant. When the robbery occurred, the defendant was in the white Nissan, across the street from the restaurant. As captured on videotape taken by a camera mounted in a police car that responded to the scene while the robbery was in progress, the defendant drove away from the scene when the officer driving that police car exited it in order to help other officers subdue Beamon and Poole. The police later determined that the Nissan driven by the defendant was registered to his girlfriend. On January 1, 2006, the police went to the girlfriend's home to interview her. She was not at home; however, while they were there, one of the detectives spotted the defendant driving the white Nissan on a nearby street, with his girlfriend in the car. The detective walked toward the street, with his shield in his left hand, and directed the defendant to stop. Rather than obey that instruction, the defendant accelerated, and drove away. Following a short but fruitless search, the police returned to the girlfriend's home and asked one of her relatives to call her and

ask that she return home. This was done, and the white Nissan returned, this time with the defendant's girlfriend driving, and the defendant as passenger. The defendant exited the vehicle and, although the detective's gun was holstered, the defendant raised his hands in a gesture of surrender, stating that he knew why the police were there; that it was "about the thing that happened with George;" that he "saw the robbery go down" but did not have anything to do with it. The defendant later gave a statement to the police in which he stated, among other things, that after he dropped Beamon and Poole off somewhere in Freeport, at a street he could not identify, he telephoned a girl named "Christine," whom he claimed to have met online. He drove to meet her at some place in Freeport. He could not provide Christine's last name, telephone number, or screen name, or the street on which he met her. He could not provide his own screen name. He also told the police that Christine got into his car, and the two talked for about 10 minutes, at which point she exited the vehicle, and the defendant drove across the street. The defendant further stated that after he had done so, a police car approached from behind him and pulled him over. The police officer said that there was a robbery in progress and then ran across the street to the back of a Chinese restaurant. The defendant stated that he saw the robbery "going down," stayed in his car for a while, and then left. The defendant also told the police that the next day, he called Beamon's mother, and told her that "George might have gotten into trouble."

When viewed in the light most favorable to the prosecution, the evidence provided a valid line of reasoning and permissible inferences from which a rational trier of fact could conclude that the defendant was guilty of aiding the robbery as the getaway car driver (*see People v Mott*, 147 AD2d 595, 595 [1989]; *People v Turner*, 141 AD2d 878, 878-879 [1988]). Based upon the totality of the conduct of the defendant and the surrounding circumstances (*see People v Mejia*, 297 AD2d 755, 756 [2002]; *People v Woodbourne*, 237 AD2d 547, 547 [1997]), the proof was legally sufficient for the jury to infer that the defendant shared the intent of Beamon and Poole to rob the restaurant in Freeport and, thus, was sufficient to establish the defendant's guilt as an accessory to robbery in the first degree (three counts) (*see* Penal Law §§ 20.00, 160.15 [2]), robbery in the second degree (three counts) (*see* Penal Law §§ 20.00, 160.10 [1]), and criminal use of a firearm in the first degree (*see* Penal Law § 265.09 [1] [a]). The evidence also was legally sufficient to establish his guilt of facilitation in the fourth degree (*see* Penal Law § 115.00 [1]).

However, the evidence was legally insufficient to establish the

defendant's guilt as an accessory pursuant to count 11 of the indictment, which charged criminal use of a firearm in the first degree under Penal Law § 265.09 (1) (a). Among other things, that subdivision requires the possession of a "deadly weapon"— that is, one that is both operable and loaded with live ammunition (see Penal Law § 10.00 [12]; § 265.09 [1] [a]; People v Shaffer, 66 NY2d 663, 664 [1985]). In this case, the firearm forming the predicate for the charge in count 11 was a .380 semiautomatic pistol. One of the People's witnesses testified at trial that when found at the crime scene, this pistol was not operable. Accordingly, the County Court correctly granted that branch of the defendant's application which was to set aside the jury's verdict to the extent it found him guilty of count 11 of the indictment, and to dismiss that count of the indictment. Mastro, J.P., Miller, Balkin and McCarthy, JJ., concur.