OPINION OF THE COURT
Daniel R. Palmieri, J.
This matter was assigned to me on or about January 22, 2010, after the judge to whom it had been assigned issued an order recusing himself from further proceedings.
The defendant’s motion pursuant to CPL 330.30 (1) to set aside the jury verdict of guilty and pursuant to Judiciary Law § 21, for a mistrial based upon the trial court’s recusal, is denied in its entirety.
It is first necessary that the court decide whether to order a mistrial based on the trial court’s sua sponte recusal from further presiding or deciding any postverdict applications. After the jury verdict in this case was announced and received, the trial judge issued an order of recusal based on reasons set forth therein. This same judge had presided during the entire trial, through verdict. There is no claim or allegation that the judge was aware of the grounds for the recusal until after the verdict, and when he did learn of the predicate facts, he immediately informed the attorneys and acted on his own.
The branch of this motion that is based upon Judiciary Law §21 seeks a mistrial based on such recusal because the original trial judge will not be able to decide this present motion to set aside the verdict, or to preside over any further proceedings. Judiciary Law § 21 provides:
“A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.”
This statute, or its predecessors, has been in effect for over 100 years and stands for the proposition that the right to have a question determined by the justice who hears oral argument is so fundamental that it may not be waived. (Morris-Imhoff v State of New York, 22 Misc 3d 545 [Ct Cl 2008].)
Further, where the trial is without a jury, the requirement that the judge who hears the case also be the judge who renders *494 a decision makes eminent good sense, even in the absence of a statute. (See East Coast Med. Care, P.C. v State Farm Mut. Auto. Ins. Co., 11 Misc 3d 732 [Civ Ct, Kings County 2006].) In such cases it has been held that “[t]he right to have a decision made by the Trial Judge who presided over the entire matter is so basic and fundamental that it is not waived by the failure of counsel to object at the time of the [trial].” (Matter of Connelly-Logal v West, 272 AD2d 920 [4th Dept 2000]; see also State of New York v General Elec. Co., 215 AD2d 928 [3d Dept 1995]; People v Cameron, 194 AD2d 438 [1st Dept 1993]; People v Hooper, 22 AD2d 1006 [4th Dept 1964].)
It thus is clear that where a judge is acting as a finder of fact, such as in a hearing or a nonjury trial, or has heard the oral argument on a motion, that same judge should be the person who renders the decision or issues the verdict. Here, however, the finder of fact was a jury.
Our own Second Department has held that the trial judge’s role in a criminal jury case is restricted by statute to questions of law. Factual review is reserved exclusively to the jury and, on appeal, to the Appellate Division. The trial judge therefore has neither the duty nor the authority to evaluate witness credibility. In People v Thompson (222 AD2d 156, 159 [2d Dept 1996], affd 90 NY2d 615 [1997]), the judge who began the criminal trial was replaced in midtrial by another judge, and the appellate court held that absent demonstrable prejudice, substitution by a new trial judge who has reviewed and become thoroughly familiar with the trial record was proper. (Id. at 157.)
More recently, in People v Thomas (45 AD3d 483 [1st Dept 2007]), a judge became incapacitated during a criminal trial. The court held that in the absence of undue prejudice, she could be replaced by a substitute jurist who indicates on the record the requisite familiarity with the proceedings.
Similarly, it has been found that there is no Judiciary Law § 21 impediment to the determination of a post-trial motion, not argued orally, by a replacement judge from the same court and county, because the perspective of the trial judge was not essential to proper evaluation of such motion. (Bonasera v Town of Islip, 19 AD3d 525 [2d Dept 2005].) Indeed, absent from the Bonasera decision is the requirement that the replacement judge attest to her familiarity with the record. The court in Weiss v City of New York (277 AD2d 36 [1st Dept 2000]) also held that Judiciary Law § 21 does not prohibit a substitute judge from *495 deciding a matter where purely legal questions are at issue, all relevant argument is preserved in the record, and there is no requirement that credibility be assessed or that conflicting testimony be weighed (citing Plunkett v Emergency Med. Serv. of N.Y. City, 234 AD2d 162 [1st Dept 1996] [presiding judge died after submission of oral and written motions to set aside jury verdict but before decision thereon]).
The leading case in this area remains People v Thompson (90 NY2d 615 [1997], supra) where the trial judge became ill and thus was unable to complete the trial, and was replaced by another who familiarized himself with the record and denied a motion for a mistrial. Citing People v Vilardi (76 NY2d 67 [1990]), the Thompson court held that there is no state constitutional mandate for a jury trial before the same judge from start to finish (90 NY2d at 620-621), and noted that as the Federal Rules of Criminal Procedure provide guidelines for the substitution of a judge during a jury trial, there is no violation of due process under the Federal Constitution. Specifically addressing Judiciary Law § 21, the court found that the “provision does not prevent the substitution of a Judge in a jury trial since the ultimate determination of guilt or innocence belongs to the jury and not the Trial Judge.” {Id. at 621.)
This present motion made to set aside the verdict based on “a matter of law” does not require, as a basis for determination, that the court adopt or reject any evidence adduced at the trial. As is discussed in more detail below, a court addressing a motion under CPL 330.30 (1) has less authority than an intermediate appellate court, because it must deal solely with legal issues and is barred from making findings of fact or exercising discretion in the interests of justice. (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 330.30, at 69 [2005 ed]; People v Sheltray, 244 AD2d 854 [4th Dept 1997], lv denied 91 NY2d 897 [1998]; People v Garcia, 237 AD2d 42, 48 [1st Dept 1998], revd on other grounds 93 NY2d 42 [1999]; People v Ponnapula, 229 AD2d 257 [1st Dept 1997].)
Because a decision on a motion to set aside a verdict is based entirely on legal principles, and this court has read and become familiar with the entire record of the trial that has been submitted by the parties, it finds that there are no grounds for a mistrial based upon a violation of Judiciary Law § 21. Accordingly, that branch of the motion which seeks a mistrial based upon the ground that this court is barred from deciding this motion is denied.
*496 Turning to the merits, so much of this application made pursuant to CPL 330.30 (1) is also denied.
Defendant was indicted, tried and convicted in connection with the murder by gunshot of Kareem Sapp, which occurred on the afternoon/early evening of December 18, 2007.
Following a jury trial in September 2009, presided over in its entirety by Honorable Jerald S. Carter, defendant was convicted on all counts of the indictment: Penal Law § 125.25 (1), intentional murder in the second degree; and two counts of Penal Law § 265.03 (1) (b) and (3), criminal possession of a weapon.
After the verdict was rendered, the trial judge became aware of the facts which were the grounds for his recusal. He immediately informed the attorneys and advised them of his intent to recuse himself and, other than issuance of his recusal order on December 2, 2009 (the date scheduled for sentencing), did not further participate in the case. The instant motion was made after the judge informed the attorneys of his intention.
This court has read and familiarized itself with the facts by having read the complete trial transcript, including all recorded colloquy, legal arguments and rulings. The parties have not submitted transcripts of the jury charge or the rendition of the verdict, and have not referred to those events. It is therefore assumed that nothing in the charge or verdict constitutes a basis for the request to set aside the verdict. The recitation that follows is drawn largely from the People’s case, in accord with the legal standards discussed below.
The victim had driven, with two passengers, to pick up and give a ride to school to Martinique Gray. When he arrived at the house where Gray was residing with the defendant, he exited his car to put some belongings in the trunk. According to the testimony of one of the passengers in the car, Joel Delacruz, he then was shot by a tall, thin, unknown assailant wearing black clothing, including a black hoodie. The assailant then ran away on foot.
Defendant and Gray had been romantically involved at or about this time, and Gray and the victim were lifelong friends. However, Gray and the victim had also engaged in sexual relations less than one year before the shooting. Gray acknowledged that there were rumors circulating in the neighborhood about her having had sexual relations with the victim. She testified that when confronted by the defendant about those rumors she *497 lied to him and denied that they were true, confessing to him only after the victim had been killed. However, it is clear from her testimony that the defendant had in fact heard those rumors beforehand. There was no testimony from Gray to the effect that her denial was accepted by the defendant and/or that it had satisfied him. She also described “dirty looks” occasionally being exchanged between the defendant and the victim.
On the day of the shooting, Gray had called the victim to request a ride after the defendant was unable to accommodate her similar request, and this call was corroborated by the victim’s two passengers. Gray stated that the defendant was in the room when she placed that call, but she did not use the victim’s name. The defendant then left the room while she was still on the phone. There is no testimony as to when the defendant left the house. When the victim went to pick up Gray, he was accompanied by the two passengers. The shots were fired as Gray was crossing the street to get to the car.
None of the witnesses present identified the defendant as the shooter. He denied involvement with the shooting to the police, and neither the weapon nor any physical evidence was recovered from or connected to the defendant.
However, one Shamiquia Nelson testified to certain incriminating statements by the defendant made later that day. She informed the police that she resided in a house on the same street a few houses distant from defendant’s house, heard the gun shots and remained home that evening. She had seen the defendant walking up to the house where he lived earlier that afternoon, at approximately four o’clock, and he was dressed in black clothing. Nelson further testified that the defendant came to another house where she was present after the shooting that evening, and he was still dressed in black clothing. By this time the police were present, with other responders who had remained in the area since the first calls for aid.
The topic of the killing was very much in the forefront of local discussion. Nelson stated that after the defendant arrived, she and other females were asked to go upstairs to the bedrooms, but she remained on or near the staircase, in a position to hear the conversation on the main floor below her. Nelson was reminded of and acknowledged the truth of her grand jury testimony in which she had stated that she overheard the defendant state “I didn’t mean to do it, but she tested my manhood.” She also heard the defendant say that he “got rid of it in the woods.” Nelson was the only trial witness who testified *498 about these statements. Nelson also testified that she learned that the defendant’s nickname was Slim.
Among those also testifying at trial were the police officers who responded to the scene, other first responders and detectives, and the two passengers in the victim’s car.
A detective testified that upon his return to the street the night of the shooting, the defendant was wearing a black hooded garment similar in description to that worn by the shooter. As noted above, one of the victim’s passengers testified that he saw a person in a black hood running away. The black hood testimony was contradicted by a defense witness who said that the defendant was wearing a black jacket but not a hood. The court also notes that the testimony by Nelson regarding the statement made by defendant after the shooting was contradicted by other witnesses, who said that they were present at the time.
Detective Carl Re, the lead detective in the case, testified that he interrogated the defendant. While there was no confession to the crime by the defendant, Re’s testimony was that the defendant was unable to account for his whereabouts at the time of the shooting. His assertion that he was in Queens County was contradicted by cell phone records indicating that he had never left Nassau County that afternoon/evening. Re also testified that after initially denying knowledge that Gray and the victim were having sex, the defendant admitted that he had known about it.
Defendant moves under CPL 290.10 (1), trial order of dismissal, and CPL 330.30 (1), motion to set aside a verdict.
CPL 290.10 (1) gives a trial court the authority to dismiss a case at the conclusion of the People’s presentation or at the conclusion of all of the evidence on the ground that the People’s evidence is not legally sufficient to establish the offense charged. If the trial court reserves decision until after the verdict, the court must then decide the motion as if it had not reserved decision. Here, the trial court reserved decision on the defendant’s motions made after the People rested, and after both sides had rested, and apparently did not rule on the motions after the verdict.*
A motion to set aside the verdict under CPL 330.30 (1) may be based on any ground appearing in the record which would *499 require a reversal or modification as a matter of law by an appellate court.
Here, the error ascribed by the defendant to the trial court is that it should have granted defendant’s motion for a trial order of dismissal. Such a motion, insofar as is applicable here, may only be decided on the basis of insufficient evidence.
CPL 330.30 (1) quite clearly circumscribes the trial court’s role for setting aside a verdict to grounds which would require appellate reversal as a matter of law and CPL 290.10 (1) limits the court to an assessment of whether the evidence is “legally sufficient.” The foregoing effectively bars the trial court from making factual determinations or from weighing the evidence.
Therefore, whether this application is treated as a separate motion based on each of CPL 290.10 (1) and 330.30 (1), the test is limited to whether the evidence submitted by the People, viewed in the light most favorable to the People, is legally sufficient (People v Payne, 3 NY3d 266 [2004]). All questions as to the quality or weight of the evidence are deferred. (People v Brun, 58 AD3d 862 [2d Dept 2009].)
The term “legally sufficient evidence” “means competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant’s commission thereof’ (CPL 70.10 [1]). Hence, the court in making an evaluation of a motion to dismiss has no authority to dismiss for any other reason. (People v Halstead, 3 Misc 3d 496 [Crim Ct, Kings County 2004].) Stated differently, a court must determine whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the jury on the basis of the evidence — again, viewed in the light most favorable to the People. (People v Covington, 18 AD3d 65 [1st Dept 2005], lv denied 5 NY3d 787 [2005].)
Legal sufficiency review and weight of the evidence review involve different criteria. Weight of the evidence review, which is conducted by appellate courts, recognizes that even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. An appellate court weighing the evidence, unlike this court, must review the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony. If, based on all the credible evidence, a different finding would not have been unreasonable, and if the trier of fact has failed to give the evidence the weight it should be accorded, the appellate court may set aside a verdict. When *500 an appellate court performs weight of the evidence review, it sits, in effect, as a “thirteenth juror.” (People v Cahill, 2 NY3d 14, 57-58 [2003].)
In sum, a trial court’s power to set aside a verdict is far more limited than that granted to an intermediate appellate court on direct appeal. A trial court may not decide whether the quantum and quality of the evidence presented against defendant constitute a basis upon which to set aside a verdict. Rather, the standard here is legal sufficiency. (People v Ponnapula at 266.)
As indicated above, CPL 330.30 (1) authorizes a trial court to set aside or modify a verdict only in the case of error, which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court. Thus, defendant’s conviction could be set aside at the level of this trial court only on the basis of insufficient evidence, i.e., evidence which, as a matter of law, was inadequate to prove guilt beyond a reasonable doubt.
Legal insufficiency may be predicated on witness testimony only when that testimony is found to be so unworthy of belief as to be incredible as a matter of law. (People v Carthrens, 171 AD2d 387, 392 [1st Dept 1991]; People v Garcia, 237 AD2d at 48.) That is because trial courts, sitting with juries, acting as judges of law but not facts, are not empowered under the Criminal Procedure Law to vacate a verdict on the basis of their own assessment of the facts or the weight of the evidence. (People v Goodfriend, 64 NY2d 695, 697 [1984].)
In view of the foregoing evidence and the legal standard to be applied, the court concludes that the People presented a legally sufficient case to the jury.
Viewed in a light most favorable to the People, the evidence established that the defendant was romantically involved with Martinique Gray at or close in time to the shooting. Gray and the victim had had sex less than a year beforehand. The defendant had heard neighborhood rumors that she and the victim had engaged in such consensual sex, and he had confronted Gray with those rumors.
The defendant’s nickname was Slim. He was seen by Shamiquia Nelson the afternoon of the shooting, dressed in black. Gray testified that when she made the telephone call to the victim to ask for a ride to school the defendant was in the room, and although the victim’s name was not mentioned, the *501 defendant left the room and was not seen again until after the murder. The detective assigned to the case testified that the defendant was unable to establish his whereabouts at the time of the shooting.
A witness who saw the shooter fleeing the scene testified that he was tall and thin and dressed in a black hooded garment. Nelson testified that the defendant returned to the block afterwards, and was still dressed in black, as he had been prior to the incident. She then heard him make statements that he “didn’t mean to do it” but “she tested [his] manhood.” She also heard him say that he “put it in the woods.”
The court finds that the foregoing constitutes legally sufficient proof that the defendant had a motive to harm the victim, and that permissible inferences may be drawn from the evidence adduced at trial that he had committed the intentional murder of Kareem Sapp, which undisputedly was by means of a gun. The court thus holds that the People satisfied the elements of the crimes charged under Penal Law § 125.25 (1), intentional murder in the second degree, and Penal Law § 265.03 (1) (b) and (3), criminal possession of a weapon in the second degree.
The defendant’s motion is therefore denied in its entirety.

 The transcript submitted by the parties ends with the summations. The court therefore makes no determination based on anything that transpired thereafter.