■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DIOGENES MILANES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Dunkin, J.), rendered January 29, 1982, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, indictment dismissed and case remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50. The defendant was indicted for the crime of murder in the second degree arising out of the stabbing death of Joseph Jones on July 15, 1979, at approximately 5:00 P.M., while he was near the corner of 88th Avenue and Sutphin Blvd., in Queens. At the time of trial the defendant was a gainfully employed 42-year-old man who had never been convicted of a crime. Defendant contends, *inter alia,* that the evidence, which was wholly circumstantial in nature, was insufficient to establish his guilt beyond a reasonable doubt. We agree. On July 15, 1979, the deceased, Joseph Jones, his girlfriend, Marion Willoughby, and the defendant were members of

a group fishing trip which embarked from Queens early in the morning and returned sometime in the late afternoon. The People's prime witness was Marion Willoughby. According to Willoughby, Jones went on the trip equipped with a fishing knife and a small television set. It was stipulated that when Jones' knife was found on him, it was covered with his own blood. The television was lent to a boy during the fishing trip but it was not returned. Willoughby testified that during the fishing trip she became friendly with defendant while playing cards, and that both she and Jones sat with the defendant on the bus ride back to Queens from the pier. She testified further that during the trip the three of them drank liquor from a bottle provided by the defendant and that they all joked and laughed. Upon exiting the bus Jones and Willoughby went to her car. Upon realizing that the television had not been returned, Willoughby suggested that they ask the defendant about the whereabouts of the set. She left the two men talking while she went into a bar to use the ladies' room. She was gone about 10 minutes. Before entering the bar she noticed that there were a good number of people on the street. When she returned from the ladies' room she offered the defendant a drink but he refused it, walked past her and went around the corner. Thereafter, Willoughby walked over to Jones and discovered that he had been stabbed. Jones died as a result of stab wounds inflicted by his own knife which was removed from his person at the hospital. Marion Willoughby testified that she did not see the two men arguing and that she never saw either one touch the other. In addition, several police officers who responded to the scene testified that Willoughby was intoxicated. Moreover, the first police officer to interview Willoughby testified that the witness told him that she saw a person other than the defendant take the television and then stab the deceased. Quite obviously this version is contrary to the one she gave at the defendant's trial. Thus, the record reveals that no witness saw the stabbing and that no witness other than Willoughby could confirm that the defendant was with the deceased just prior to his death. The defendant took the stand on his own behalf. According to him, he decided to participate in the fishing trip after seeing a sign for it in the bar located adjacent to the crime scene. He testified that he knew no one on the trip and denied any connection with either the deceased or Willoughby. He conceded that he had cuts on his hand on the day of the fishing trip but maintained that he received the cuts while taking a fish hook out of a fish. Upon conclusion of the trip the defendant noticed an argument ensue over a television set. Not knowing anyone in the altercation, he went into the bar where he consumed a few beers and a "drink" and later walked towards his home which was located about five blocks away. He admitted to being very drunk on that date. This conviction was clearly based on circumstantial evidence. In *People v Kennedy* (47 NY2d 196, 202), the Court of Appeals recently reiterated the rule for such cases. "We have often had occasion to discuss the proper standard for testing the sufficiency of a conviction based solely on circumstantial evidence, and have clearly stated that the conclusion of guilt must be consistent with and flow naturally from the proven facts, and that those facts viewed as a whole must exclude 'to a moral certainty' every conclusion other than guilt (e.g., *People v Cleague* [22 NY2d 363], *supra,* at pp 365-366; *People v Benzinger* [36 NY2d 29], *supra,* at p 32)." The court noted further: "the rationale underlying the requirement of careful scrutiny of decisions based on circumstantial evidence is the comparative ease with which logical flaws can creep into the reasoning process in such cases". The dangers of circumstantial evidence were set out in *People v Benzinger* (36 NY2d 29, 32): "the rule hopefully forecloses a danger legitimately associated with circumstantial evidence — that the trier of facts may leap logical gaps in the proof

offered and draw unwarranted conclusions based on probabilities of low degree (see *People* v. *Cleague* [22 NY2d 363], *supra,* at p. 367). In the end, the application of the test becomes 'a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts. (*People* v. *Borrero* [26 NY2d 430], *supra,* at p. 435; *People* v. *Wachowicz,* 22 N Y 2d 369, 372).' " Even when the facts are viewed most favorably to the People, as they must be on this appeal (see *People v Cleague,* 22 NY2d 363; *Noto v United States,* 367 US 290), the evidence does not exclude to a moral certainty all hypotheses of innocence. The key prosecution witness was absent from the scene for 10 minutes during which time the crime occurred. Other people in the street had an opportunity to commit the crime. According to the key witness the deceased and defendant had an amicable relationship. The defendant was not found with the murder weapon. Rather, the weapon was found on the decedent's person at the hospital. Inasmuch as the People have not met their burden of proof, the conviction must be reversed and the indictment dismissed. In view of our determination we need not address the defendant's other contention. Titone, J. P., Weinstein, Thompson and Niehoff, JJ., concur.