■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD CAPELLA, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Calabretta, J.), rendered November 19, 1982, convicting him of murder in the second degree (two counts) and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Judgment reversed, on the law and the facts, and indictment dismissed. The case is remitted to the Supreme Court, Queens County, for the purpose of entering an order, in its discretion, pursuant to CPL 160.50.

The evidence against defendant, which was entirely circumstantial, failed to establish his commission of the crimes of murder in the second degree and criminal possession of a weapon in the second degree beyond a reasonable doubt. The facts adduced at the trial, when viewed in the light most favorable to the People (*see, People v Kennedy,* 47 NY2d 196, 203), "are not inconsistent with defendant's innocence, nor does the evidence exclude to a moral certainty every reasonable hypothesis of innocence" (*People v Way,* 59 NY2d 361, 363; *see also, People v Kennedy, supra,* p 202; *People v Benzinger,* 36 NY2d 29, 32; *People v Wachowicz,* 22 NY2d 369, 372). Therefore, the judgment of conviction must be reversed and the indictment dismissed.

During the early morning hours of November 8, 1980, the body of Thomas Neilan, with two bullet wounds to the head and an abrasion of the neck caused by a third bullet, was discovered in the front seat of his car. The only evidence establishing defendant's presence near the scene of the crime came from Anthony Del Rio, a neighborhood resident, who testified that he recognized defendant, a former junior high school classmate of his, sitting in a brownish-gold Chevrolet Nova parked around the corner from the blue Ford Maverick in which Del Rio later discovered Neilan's body. The testimony of Del Rio significantly conflicted with the testimony of Robert Cesnohlidek, his next door neighbor. Cesnohlidek testified that he saw an individual, whom he could not identify, run back and forth between a dark blue Ford Maverick parked in the middle of his street and what appeared to be a dark green car with a shiny finish parked

around the corner. Cesnohlidek's description of the individual whom he observed running between the two cars, a male between five feet six and five feet seven inches tall with a medium build and hair shaped in what appeared to be a large black Afro, did not convincingly establish that the running person was defendant, although the aforementioned description is consistent with the testimony of a detective who saw defendant approximately one month after the date of the homicide and described him as "five foot six, medium build" with a "full head of hair" which was black in color. Neither Del Rio nor Cesnohlidek testified that they heard any shots fired.

Even if it is assumed that Del Rio was correct when he testified that defendant was seated in a car parked around the corner from the Ford Maverick in which the body of Thomas Neilan was found, defendant's mere presence near the scene of the crime, by itself, was insufficient to establish his guilt beyond a reasonable doubt of the charge that he acted in concert with others to cause Neilan's death. The People failed to present sufficient evidence, circumstantial or otherwise, to establish that defendant possessed the requisite criminal intent either to kill or to rob Thomas Neilan (*see,* Penal Law § 125.25 [1], [3]), or that he solicited, requested, commanded, importuned or intentionally aided other undisclosed persons to commit the murder (*see,* Penal Law § 20.00; *People v Way,* 59 NY2d 361, *supra; People v La Belle,* 18 NY2d 405, 412-413; *People v Milanes,* 91 AD2d 669; *People v Jones,* 89 AD2d 876; *People v Slaughter,* 83 AD2d 857, *affd* 56 NY2d 993). There was no meaningful evidence to supplement the observations of Del Rio and Cesnohlidek, such as evidence establishing that defendant possessed a motive to commit the crime or that defendant revealed his consciousness of guilt subsequent to its commission (*cf., e.g., People v Kennedy,* 47 NY2d 196, *supra; People v Giuliano,* 102 AD2d 559; *People v Hoppe,* 89 AD2d 670; *People v Gallo,* 75 AD2d 148; *People v Allen,* 61 AD2d 619, *affd* 48 NY2d 760). The only forensic evidence linking defendant to the crime (*see, People v Brooks,* 92 AD2d 1035) was a jacket which contained a bloodstain and which was seized from defendant by the police nearly one month after the date of the homicide. The bloodstain was analyzed by a serologist, who testified that it contained Type B blood, a characteristic shared by the deceased with approximately 10% to 15% of the general population. Furthermore, the court erred by admitting the jacket into evidence, over the objections raised by defense counsel, because the prosecutor failed to lay a foundation connecting this piece of clothing in any way with the murder of Thomas Neilan, including establishing that it was actually worn by defendant on the night of the crime

(*see, People v Mirenda,* 23 NY2d 439, 452-454; *People v Thornton,* 104 AD2d 426; *People v Kitchen,* 55 AD2d 575, 576). Under the circumstances at bar, the prejudicial impact of the blood-stained jacket on the defense outweighed its probative value regarding the issue of defendant's guilt of the murder of Thomas Neilan (*see, People v Davis,* 43 NY2d 17, 27).

Accordingly, the judgment of conviction must be reversed and the indictment dismissed. Titone, J. P., Lazer, Thompson and Eiber, JJ., concur.