■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONNIE WELLS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Balbach, J.), rendered November 19, 1982, convicting him of murder in the second degree, attempted robbery in the first degree (two counts), criminal possession of a weapon in the second degree and criminal use of firearm in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial (Naro, J.), after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement officials.

Ordered that the judgment is affirmed.

According to the testimony of the arresting detective, he and other detectives seeking to arrest the defendant as an accomplice to the murder of a cook in a Chinese restaurant, committed in the course of an attempted robbery, were admitted into the brownstone building where the defendant lived by his landlady, who lived downstairs. The detectives proceeded up the inside stairway to the second floor where the defendant's wife answered their knock on his apartment door. The detectives asked to speak to the defendant who was awakened by his wife and came out into the hallway in his bathrobe. In the hallway, the detectives told the defendant that they had information that he was the driver of the car used in the commission of a crime and that they wanted to question him at the precinct. The defendant asked if he could get dressed and the detectives accompanied him inside his apartment while he did so. At the precinct, after being advised of his rights pursuant to *Miranda v Arizona* (384 US 436), the defendant made inculpatory statements to both the detectives and an Assistant District Attorney which he subsequently sought to suppress as evidence against him.

The defendant and his wife both testified at the suppression hearing that the detectives entered their apartment uninvited

and with guns drawn, which, if true, would have violated his right to be secure in his home from warrantless arrest absent exigent circumstances or consent (see, *Payton v New York,* 445 US 573). The hearing court, however, credited the police testimony to the effect that the defendant consented to their entry into his apartment after they conversed with him in the hallway. Although the defendant further argued that the hallway of his building was his "home" and he did not consent to the entry of the detectives into the hallway, the hearing testimony established that the defendant's landlady admitted the police. Clearly the landlady possessed sufficient authority and control over the premises to effectively consent to the detectives' entry (see, *People v Cosme,* 48 NY2d 286, 290). Suppression of the defendants' statements was, therefore, properly denied, as those statements were not the product of any illegal police conduct.

The defendant complains for the first time on appeal about certain portions of the court's charge. In the absence of an exception prior to deliberations, these claims of error are unpreserved for appellate review (see, CPL 470.05 [2]), and we decline to address them in the interest of justice.

Lastly, we reject the defendant's claim that the admission in evidence of a shotgun linked to the murder at the Chinese restaurant was erroneous. The shotgun was relevant evidence and its relevance was not outweighed by its potential for prejudice. Even if its admission were erroneous, the error would have been harmless in light of the overwhelming evidence of the defendant's guilt (see, *People v Crimmins,* 36 NY2d 230; cf., *People v Capella,* 111 AD2d 179). Mangano, J. P., Rubin and Spatt, JJ., concur.

Harwood, J., dissents and votes to reverse the judgment appealed from, on the law and the facts, to grant that branch of the defendant's motion which was to suppress his statements to law enforcement officials, and to order a new trial, with the following memorandum, in which Brown, J., concurs: The suppression hearing record establishes that police detectives, who drove by the defendant's home hoping to find him outside, planned for three days to arrest the defendant as an accomplice to a shooting murder and attempted robbery. However, rather than obtain a warrant, for which there was sufficient basis, four detectives went to the defendant's home at 8:00 A.M. on a Sunday morning to make a warrantless arrest. There is no claim that exigent circumstances justified entry into the defendant's dwelling (see, *Payton v New York,*

445 US 573), which was located on the otherwise unoccupied second floor of a three-story, three-family brownstone building.

The landlady, who admitted the detectives into the ground floor of the building, not through the front door but through her apartment, testified at the suppression hearing that when she opened her door to their knock, the detectives had their guns drawn. She also testified that she permitted their entry because she thought she "had to", and that, while two detectives proceeded up an inside staircase to the second floor, the others remained downstairs, guarding the front and rear doors with "the revolver in their hands".

The arresting detective testified at the suppression hearing that no guns were drawn at any time while they were at the premises, notwithstanding that, several days before, a shootout took place between police and certain individuals, two of whom were involved in the murder and attempted robbery for which the defendant was being arrested. He testified further that the defendant, wearing pajamas, voluntarily came into the hall and invited the detectives to come inside while he dressed and after he had been asked to accompany them to the precinct for questioning. Evidence produced through the defendant and his wife, however, indicates that the detectives, after knocking at the defendant's door, entered the apartment, uninvited and with guns drawn, and that the defendant awoke on that Sunday morning to find armed detectives at his bedside telling him to "step outside".

I recognize that determinations by a hearing court as to the credibility of witnesses are not to be lightly disturbed (see, People v Armstead, 98 AD2d 726). However we are not obligated to credit testimony which "has all [the] appearances of having been patently tailored to nullify constitutional objections. In evaluating testimony we should not discard common sense and common knowledge" (People v Garafolo, 44 AD2d 86, 88). Common sense tells me that police, who apparently went out of their way not to get a warrant, would not under any circumstance treat the arrest of an individual for murder as if it were an invitation to the arrestee to attend a social gathering. Indeed, from the hour and day that the arrest took place and from the posting of guards at all exits to the building in which the defendant resided, it is obvious that they did not. In my view, the testimony of the police detective was tailored to nullify the violation of the Payton rule (Payton v New York, supra), of which the arresting detectives were obviously well aware. It was error for the hearing court to credit the People's witness.

Apart from the question of whether the "consent" of the landlady to police entry into the building was nothing more than submission to their authority, and apart from the question of whether the landlady had the requisite authority *(see, People v Cosme,* 48 NY2d 286) to consent to police entry into the hallway on the second floor, which hallway may be considered part of the defendant's home *(see, People v Lott,* 102 AD2d 506; *cf., People v McCurdy,* 86 AD2d 493), the People have, in my view, failed to sustain their heavy burden *(see, People v Gonzalez,* 39 NY2d 122) of establishing that the defendant voluntarily stepped into the hallway or that either he or his wife consented to the physical entry by police through the door of their apartment *(see, People v Levan,* 62 NY2d 139). I conclude that defendant's arrest was unlawful *(Payton v New York, supra)* and that, therefore, the defendant's statements should have been suppressed as a tainted product of it *(see, Dunaway v New York,* 442 US 200).