■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ESHON GUY, Appellant. [939 NYS2d 613]—

Spain, J. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered July 23, 2009, upon a verdict convicting defendant of the crimes of murder in the first degree, burglary in the first degree, attempted robbery in the first degree, criminal possession of a weapon in the second degree (two counts), reckless endangerment in the first degree and tampering with physical evidence.

Defendant appeals from his conviction of various crimes, including first degree murder, stemming from an April 2008 robbery and shooting death of a man in the City of Schenectady, Schenectady County. With the cooperation of several other individuals, all of whom testified against defendant at trial pursuant to cooperation agreements with the People, defendant was held responsible for plotting to rob the victim—a marihuana dealer—of drugs and money, burglarizing an apartment thought to belong to the victim, attempting to rob the victim at gunpoint, shooting in the direction of another individual, causing the victim's death by shooting him in the back, and attempting to disassemble and conceal the murder weapon. Defendant was sentenced, as a second violent felony offender, to life in prison without parole on the murder conviction, and concurrent prison terms for the other convictions. We affirm.

Defendant first contends that he was deprived of his constitutional right to trial by a jury of his choice when County Court discharged a juror over his objection. To be sure, after the jury has been sworn, a juror may be dismissed over a defendant's objection only where the court finds that the juror is " 'grossly unqualified to serve' " (*People v Rodriguez*, 71 NY2d 214, 219 [1988], quoting *People v Buford*, 69 NY2d 290, 298 [1987]; *see* CPL 270.35 [1]). However, a court must discharge a juror when, after a "probing and tactful" in camera interview with the potentially unqualified juror and in the presence of counsel (*People v Buford*, 69 NY2d at 299), it becomes obvious that the

juror " 'possesses a state of mind which would prevent the rendering of an impartial verdict' " (*id.* at 298, quoting *People v West,* 92 AD2d 620, 622 [1983] [Mahoney, P.J., dissenting], *revd* 62 NY2d 708 [1984]). Further, the trial court is accorded "great deference" in deciding whether a juror is grossly unqualified (*People v Bradford,* 300 AD2d 685, 688 [2002], *lv denied* 99 NY2d 612 [2003]), because it "is in the best position to assess partiality in an allegedly biased juror" (*People v Rodriguez,* 71 NY2d at 219).

Here, the discharged juror sent a note to County Court that read: "I live on [Hamilton] Hill [in the City of Schenectady, Schenectady County,] and I recognize at least four people so far. I've lived on the Hill, in the same house, for 38 years. I have panic attacks I'm getting nervous about. I don't know them by name, just their faces, and think they recognize me. Very possible somebody that I will know. So very sorry." Defendant does not dispute that, upon receiving the note, the court conducted a sufficient in camera inquiry (*compare People v Lapage,* 57 AD3d 1233, 1236 [2008]). In the presence of counsel, the court questioned the juror twice, giving counsel the opportunity to ask questions and to present arguments after each interview. The juror explained that for the past eight years she has taken daily medication for anxiety and that she was experiencing increased panic attacks since being selected as a juror. When specifically asked whether the situation would affect her ability to be fair, initially the juror's responses were equivocal but, when pressed as to whether her anxiety would permit her to deliberate fairly, she eventually stated, "I don't think I can do it." She also told County Court that she could not guarantee that her stress would not influence her. Under these circumstances, we defer to the court's finding that the juror's fears would interfere with her ability to carry out her duties as a juror in an impartial manner and, thus, we conclude that she was properly discharged on the ground of being grossly unqualified (*see People v Galvin,* 112 AD2d 1090, 1090-1091 [1985], *lv denied* 66 NY2d 919 [1985]; *see also People v Lennon,* 37 AD3d 853, 853 [2007], *lv denied* 9 NY3d 846 [2007]; *People v Burse,* 299 AD2d 911, 912 [2002], *lv denied* 99 NY2d 613 [2003]; *compare People v Buford,* 69 NY2d at 299-300; *People v Bradford,* 300 AD2d at 688).

Next, defendant asserts that County Court improperly admitted testimony that revealed to the jury that he was incarcerated while awaiting trial and, thus, deprived him of his right to the presumption of innocence. Contrary to the People's position, we find this issue preserved for appellate review. Defendant objected to the witness's testimony and, alternatively, requested

that the testimony be limited in scope. After the court directed that the witness would be permitted to testify to a conversation he had with defendant in the jail infirmary, but could not testify that he knew defendant previously or that defendant was in jail at the time of the trial, the court then noted to defense counsel, "You have an exception to my ruling." Under these circumstances, it was not necessary for defendant to renew his objection to the testimony as limited (*see* CPL 470.05 [2]; *People v Cobos*, 57 NY2d 798, 800 [1982]). Likewise, we do not find that defendant waived this objection when, during cross-examination, defense counsel questioned the witness about his incarceration. For the most part, counsel's questions about incarceration were directed at the witness's incarceration at other facilities prior to his incarceration with defendant, and those questions that were related to defendant did not unduly emphasize the fact that he was incarcerated.

Turning to the merits, however, we find no error in County Court's admission of this testimony regarding defendant's incarcerated status as it was "inextricably intertwined" with other, relevant testimony (*People v Conrow*, 13 AD3d 1116, 1117 [2004], *lv denied* 4 NY3d 829 [2005]) and served a legitimate state interest (*see People v Jenkins*, 88 NY2d 948, 950-951 [1996]; *compare People v Connor*, 137 AD2d 546, 550 [1988]). The permitted testimony was carefully limited, revealing only the site of the conversation—the jail infirmary—which could not fairly be extracted from the highly probative testimony regarding defendant's admissions. Further, defendant did not request a curative instruction, perhaps because such an instruction may needlessly have drawn the jury's attention to defendant's incarceration. Under these circumstances, we hold that admission of the testimony was proper and did not deprive defendant of due process or undermine the presumption of innocence (*see People v Jenkins*, 88 NY2d at 951; *People v Rhodes*, 49 AD3d 1022, 1023 [2008], *lv denied* 10 NY3d 963 [2008]; *see also People v Pelt*, 161 AD2d 284, 284-285 [1990], *lv denied* 76 NY2d 862 [1990]; *People v Moore*, 148 AD2d 754, 755 [1989], *lv denied* 74 NY2d 667 [1989]).

We also reject defendant's assertion that County Court erred in excluding certain testimony as hearsay. At trial, Jermel Hawkins and Jerome Jordan both testified, and each admitted his role of participating in defendant's planned theft of the victim's drugs and money. Subsequent to their testimony and cross-examination, defendant requested that the court issue an order to produce two witnesses, Deandre McCaskill and Eliel Pope, who had been incarcerated with Hawkins and Jordan and

whose proposed testimony might establish that Hawkins and Jordan were planning to coordinate their testimony in order to place responsibility for the homicide on defendant. Defendant also suggested that McCaskill might testify that a police officer attempted to induce McCaskill to make a false statement incriminating defendant. The court determined that such testimony constituted hearsay and denied defendant's applications.

With respect to the proffered testimony that Hawkins and Jordan were overheard discussing their intent to place the blame on defendant for the homicide, defendant argues that such statements were not inadmissible hearsay offered for the truth of the matter asserted but were verbal acts or, alternatively, the res gestae of perjury. Under the verbal act doctrine, words which accompany certain acts or conduct are admissible as nonhearsay because they are not offered to prove the truth of the statement but, rather, to assist in giving legal significance to some "otherwise ambiguous conduct" (*People v Acomb*, 87 AD2d 1, 6 [1982]; *see Matter of Alexander EE.*, 267 AD2d 723, 726 [1999]). The proffered testimony here was not offered to explain any conduct but, rather, clearly offered for the truth of the matter asserted, i.e., that Hawkins and Jordan intended to place the blame on defendant. Further, although statements that constitute "part of the criminal res gestae" are admissible as nonhearsay (*People v Lewis*, 25 AD3d 824, 826 [2006], *lv denied* 7 NY3d 791 [2006]), the party seeking to introduce res gestae statements must establish a prima facie case of the substantive crime (*see People v Caban*, 5 NY3d 143, 148 [2005]; *People v Adames*, 53 AD3d 503 [2008], *lv denied* 11 NY3d 895 [2008]). The offer of proof here was limited, and did not include any specific content suggesting that Hawkins and Jordan planned to give any false testimony at trial. Indeed, after they testified that defendant acted alone in the homicide and that he had promised them that he would take responsibility for it, defendant had a full opportunity to cross-examine each of them. Accordingly, we hold that County Court did not abuse its discretion in precluding this hearsay testimony (*see People v Hayes*, 17 NY3d 46, 53 [2011], *cert denied* 565 US —, 132 S Ct 844 [2011]).

We reach a contrary conclusion with respect to the proffered testimony of McCaskill that he was made promises by a police officer to induce false testimony against defendant. Such promises would not be offered for their truth, but for the fact that they were uttered (*see People v Mertens*, 97 AD2d 595, 596 [1983]). Nevertheless, we find that, to the extent that this testimony was improperly excluded, it was harmless error in

light of the overwhelming evidence adduced at trial against defendant.

Defendant also contends, pro se, that his first degree murder conviction and first degree attempted robbery conviction were not supported by legally sufficient evidence and were against the weight of the evidence.* Given that the shooting was witnessed by several different people who saw defendant fire multiple shots in the victim's direction, contrary to defendant's assertion on appeal, we conclude that his criminal intent was readily inferable from his conduct (*see People v Mullings*, 23 AD3d 756, 758 [2005], *lv denied* 6 NY3d 756 [2005]). Indeed, testimony established that defendant called out to the victim and, when the victim turned, shot at him from close range. Then, as the victim ran, defendant continued to shoot until he eventually inflicted a fatal wound in the victim's back. Given this evidence, we conclude that the jury's verdict on the murder charge was not against the weight of the evidence (*see People v Caruso*, 34 AD3d 863, 864-865 [2006], *lv denied* 8 NY3d 879 [2007]; *People v Mullings*, 23 AD3d at 758).

Likewise, we are not persuaded that defendant's attempted robbery conviction is unsupported by legally sufficient evidence or against the weight of the evidence despite the absence of proof that any property was taken from the victim (*see* Penal Law §§ 110.00, 160.15 [4]). Defendant's intent to rob the victim was supported by overwhelming evidence at trial, including the testimony of Leryrn Berry, defendant's paramour, that she and defendant first planned to burglarize the victim's apartment, and then, after a botched burglary of the wrong apartment, the scheme escalated into robbing the victim at gunpoint. In furtherance of this plan, Berry accompanied the victim while he conducted marihuana sales, contacting defendant by text message throughout the day to keep him apprised of the victim's whereabouts until he arrived at a desirable location for the robbery. This testimony was corroborated by several other witnesses who heard defendant plan the robbery. Further, although defendant ultimately ran from the scene after shooting the victim without taking property, his act of confronting the victim at gunpoint in accordance with the previously planned robbery is ample evidence of attempt in support of the verdict (*see People*

---

* With respect to the murder conviction, defendant failed to preserve the argument now asserted on appeal, i.e., that there was insufficient proof of the element of intent (*see People v Barringer*, 54 AD3d 442, 443 [2008], *lvs denied* 11 NY3d 830 [2008]; Penal Law § 125.27 [1]). However, as defendant also argues that his murder conviction was against the weight of the evidence, we must necessarily determine whether all the elements of that crime were sufficiently proven at trial (*see People v Danford*, 88 AD3d 1064, 1065 [2011]).

*v Heath,* 49 AD3d 970, 971 [2008], *lv denied* 10 NY3d 959 [2008]; *People v Starks,* 46 AD3d 1426, 1427 [2007], *lv denied* 10 NY3d 817 [2008]).

Finally, we also reject defendant's assertion that the Schenectady County Public Defender's Office improperly simultaneously represented him and two of the individuals who assisted him in the burglary. After this conflict was brought to County Court's attention, the court relieved the Public Defender's Office and assigned the Conflict Defender's Office to the charges pending against defendant at that time. As any potential conflict was addressed promptly—before the murder and robbery indictment was filed—we discern no prejudice to defendant (*see People v Smalls,* 282 AD2d 873, 874 [2001], *lv denied* 97 NY2d 643 [2001]).

Mercure, A.P.J., Kavanagh, Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.