Egan Jr., J.
Appeal from a judgment of the County Court of Schenectady County (Giardino, J), rendered July 15, 2011, upon a verdict convicting defendant of the crimes of rape in the first degree and unlawful imprisonment in the second degree.
*1142 Defendant was charged in a three-count indictment with rape in the first degree, unlawful imprisonment in the second degree and assault in the third degree. The charges stemmed from a sexual encounter that occurred between the victim and defendant during the early morning hours of May 27, 2010. Defendant and the victim each admitted that they had exchanged drugs for sex in the past, but their accounts of the incident in question varied dramatically. According to defendant, he approached the victim in the area of Albany and Backus Streets in the City of Schenectady, Schenectady County, inquired as to whether she was “working” and indicated that he “want[ed] to get laid,” whereupon the victim agreed to have sexual intercourse with him in exchange for “[a] 40 of crack.” The victim disputed this version of the events, contending instead that she agreed to “[hjang out[,] [d]rink[,] [pjrobably smoke” and perform oral sex upon defendant — a man she knew as “Green Eyes” — in exchange for a quantity of crack cocaine. After driving to a local convenience store to purchase “some Pepsi, blunt wraps ...[,] a box of condoms” and some Starbursts, defendant and the victim drove to defendant’s apartment. While there, defendant and the victim each consumed alcohol, defendant smoked marihuana and the victim smoked crack. After a period of time, the victim showered, following which defendant and the victim had sexual intercourse. Defendant contended that the entire encounter was consensual, while the victim testified that she showered only after defendant started slapping her around and that defendant thereafter raped her. Following this incident, defendant called a cab for the victim and, as the victim was leaving the premises, defendant purportedly stated, “Bet you won’t get back in my car.”
At the conclusion of the ensuing jury trial, County Court dismissed the assault count and the jury thereafter found defendant guilty of rape in the first degree and unlawful imprisonment in the second degree. Defendant’s subsequent motion to set aside the verdict due to alleged errors in the jury’s deliberations was denied, and defendant thereafter was sentenced, as second felony offender, to time served on the unlawful imprisonment conviction and 20 years in prison — followed by 10 years of postrelease supervision — on the rape conviction. This appeal by defendant ensued.
Of the various arguments raised by defendant upon appeal, only three warrant discussion. Initially, we reject defendant’s contention that the jury’s verdict was against the weight of the evidence. As noted previously, there is no dispute that defendant and the victim engaged in sexual intercourse on the morn *1143 ing in question; the primary question for the jury’s consideration was whether such encounter was by “forcible compulsion” (Penal Law § 130.35 [1]). “Where, as here, [an] acquittal[ ] would not have been unreasonable, this Court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony” (People v Beliard, 101 AD3d 1236, 1238 [2012], lv denied 20 NY3d 1096 [2013] [internal quotation marks and citations omitted]).
The victim’s and defendant’s contradictory testimony regarding the nature of their encounter presented the jury with “a classic credibility issue” (People v Allen, 13 AD3d 892, 894 [2004], lv denied 4 NY3d 883 [2005] [internal quotation marks and citation omitted]), and the jury plainly elected to credit the victim’s account of the incident. In this regard, our review of the record reveals that the victim’s testimony was neither “contradicted by any compelling evidence” nor “so unworthy of belief as to be incredible as a matter of law” (People v Fernandez, 106 AD3d 1281, 1285 [2013] [internal quotation marks and citations omitted]; accord People v Allen, 13 AD3d at 894). According due deference to the jury’s “opportunity to view the witnesses, hear the testimony and observe demeanor” (People v Tompkins, 107 AD3d 1037, 1038 [2013] [internal quotation marks and citation omitted]; see People v Beliard, 101 AD3d at 1239), we cannot say that the jury failed to accord the evidence the weight it deserved.
To the extent that defendant’s challenge regarding the admission of certain testimony under the prompt outcry exception to the hearsay rule has been preserved for our review, we find it to be lacking in merit. “Under the prompt outcry rule, evidence that a victim of sexual assault promptly complained about the incident is admissible to corroborate the allegation that an assault took place” (People v Lapi, 105 AD3d 1084, 1087 [2013], l; denied 21 NY3d 1043 [2013] [internal quotation marks and citations omitted]; see People v McDaniel, 81 NY2d 10, 16-17 [1993]; Matter of Gregory AA., 20 AD3d 726, 727 [2005]). Although “promptness is a relative concept dependent on the facts” (People v McDaniel, 81 NY2d at 17), courts traditionally have required the complaint to be made “at the first suitable opportunity” (People v O’Sullivan, 104 NY 481, 486 [1887]; accord People v Rosario, 17 NY3d 501, 512 [2011]; People v McDaniel, 81 NY2d at 17; People v Pruchnicki, 74 AD3d 1820, 1821 [2010], lv denied 15 NY3d 855 [2010]). As all of the challenged disclosures by the victim were made within hours of the underlying incident, we are satisfied that such complaints were timely *1144 (see People v Shepherd, 83 AD3d 1298, 1300 [2011], lv denied 17 NY3d 809 [2011]; compare People v Rosario, 17 NY3d at 513; People v Allen, 13 AD3d at 894) and, hence, the admission of such testimony did not constitute improper bolstering.[1]
We do, however, find merit to defendant’s claim that a new trial is warranted based upon errors that occurred during the jury’s deliberations. The jury commenced its deliberations at 12:27 p.m. on April 5, 2011 and, insofar as is relevant here, County Court received a note from the jury at 3:00 p.m. requesting that juror No. 4 be dismissed. Juror No. 4 then was brought into the courtroom and questioned regarding her stated inability to render a decision. Based upon her responses to the questions posed by County Court and counsel, as well as her observed demeanor, County Court concluded that juror No. 4 was “grossly unqualified to serve.”[2] At 4:05 p.m., juror No. 4, the remaining 11 jurors and the sole remaining alternate were brought into the courtroom, dismissed for the day and admonished, “Don’t start deliberating until I get you all [back] here [tomorrow].” Although County Court advised the parties that it would revisit the issue in the morning, the court expressed its inclination to discharge juror No. 4 as it did not believe that this juror could give either the People or defendant “a fair trial.”
When court reconvened the following morning, and before the issue regarding juror No. 4 could be resolved, County Court received a note from the jury at 9:11 a.m. raising an issue with respect to juror No. 12 — specifically, an allegation that this juror failed to disclose during voir dire that he previously had been accused of a sex crime, prompting the other jurors to question whether juror No. 12 could be “unbiased.” When County Court inquired as to how the issue concerning juror No. 12 came to light, the jury foreperson responded, “He told us all in the jury room.” County Court then stated, “And you’ve had discussions with the other jurors in his absence or not?”, to which the foreperson replied, “Yes.” When pressed on this issue, the foreperson indicated that the disclosure had been made the previous day after the jury commenced its deliberations— specifically, that juror No. 12 had made his disclosure while the jury was “talking about the facts” of this case. Upon further questioning, the foreperson could not recall how the individual *1145 jurors had responded to this event, noting that “it had gotten a little heated in [the jury room],” but indicated that the jurors “thought [juror No. 12’s disclosure] should be brought to everyone’s attention.”
While debating how to respond to the issue concerning juror No. 12, juror No. 4 again was brought into the courtroom and, in response to questioning by County Court, indicated that she was “[n]ot well” and that she would “rather not do it,” i.e., she would prefer not to continue deliberations. After giving what the parties have now characterized as a modified Allen charge, juror No. 4 indicated that she could continue and, over defendant’s objection, County Court directed that juror No. 4 remain on the jury. Mindful of the new issue concerning juror No. 12, his disclosure and the ensuing “heated” discussion among the members of the jury, County Court asked juror No. 4, “Now, were there any other incidents in the jury room about jurors in prior incidents that came up while you were in there?”, to which juror No. 4 replied, “No.”
As juror No. 4 waited in a hallway, juror No. 12 was brought into the courtroom and questioned regarding the substance of the jury’s note. The juror denied that he had been accused of a sexual act, but acknowledged that he had discussed with the jury an incident wherein his sister-in-law had “fabricat[ed]” a sexual relationship with him — the gist of the discussion being “that people can say something about you that is not necessarily true.” Juror No. 12 then returned to the jury room, followed a short time later by juror No. 4.
At 10:04 a.m., all 12 jurors plus the remaining alternate were returned to the courtroom, at which time County Court released the alternate juror. Without further inquiry, and after only generally reminding the individual jurors of their obligation to keep an open mind and listen to one another, County Court directed the jury to “continue [its] deliberations.” After the jury retired at 10:06 a.m., defense counsel reiterated his previously expressed concerns that the jury had discussed juror No. 12’s disclosure outside of his presence and requested that County Court conduct a further inquiry in this regard. County Court denied counsel’s request to pursue this matter and, at 11:21 a.m., the jury returned with a verdict. Before the jury was brought into the courtroom, defense counsel again requested that County Court question juror Nos. 4 and 12 and seek further clarification as to the various discussions that had occurred in the jury room. County Court again denied defendant’s request and proceeded to “take the verdict.”
Initially, we agree with defendant that County Court erred in *1146 failing to discharge juror No. 4. “If at any time after the trial jury has been sworn and before the rendition of its verdict, . . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case . . ., the court must discharge such juror” (CPL 270.35 [1] ; see People v Harris, 99 NY2d 202, 212 [2002]; People v Reichel, 110 AD3d 1356, 1358 [2013]). “A juror will be deemed to be grossly unqualified to serve only when, after conducting] a probing, tactful inquiry into the specific circumstances, it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict” (People v Reichel, 110 AD3d at 1358 [internal quotation marks and citations omitted]; see People v Buford, 69 NY2d 290, 298-299 [1987]; People v Guy, 93 AD3d 877, 877-878 [2012], lv denied 19 NY3d 961 [2012]; see also People v Brock, 107 AD3d 1025, 1028 [2013], lv denied 21 NY3d 1072 [2013]). Although the trial court traditionally is accorded “great deference in deciding whether a juror is grossly unqualified” (People v Guy, 93 AD3d at 878 [internal quotation marks and citation omitted]), inasmuch as juror No. 4 repeatedly expressed her inability to render a decision one way or the other, and County Court expessly found that she was both grossly unqualified to serve and unable to afford either the People or defendant a fair trial, County Court erred in failing to discharge juror No. 4 on the afternoon of April 5, 2011. As we are of the view that juror No. 4 should have been discharged on that date, we need not address the propriety of the modified Allen charge that was given the following day in an apparent effort to rehabilitate this juror.
Moreover, even assuming that we discerned no impropriety with respect to juror No. 4’s continued service on the jury, we nonetheless would be compelled to reverse defendant’s conviction and order a new trial, as it is readily apparent from the record that the jury deliberated — on at least one occasion — with fewer than 12 members present. CPL 310.10 (1) provides, in relevant part, that “[f] olio wing the court’s charge, . . . the jury must retire to deliberate upon its verdict in a place outside the courtroom . . . and must, except as otherwise provided in [CPL 310.10 (2)], be continuously kept together under the supervision of a court officer.” Consistent with the provisions of CPL 310.10 (2) , “[a]t any time after the jury has been charged or commenced its deliberations, and after notice to the parties and affording such parties an opportunity to be heard on the record outside of the presence of the jury, the court may declare the deliberations to be in recess and may thereupon direct the jury to suspend its deliberations and to separate for a reasonable period of time to be specified by the court.” Additionally, “[b]efore *1147 each recess, the court must . . . direct [the jury] not to resume its deliberations until all twelve jurors have reassembled in the designated place at the termination of the declared recess.”
To be sure, a “brief, momentary separation” (People v Kelly, 16 NY3d 803, 804 [2011]) among jurors is permissible in order to, for example, allow the court to question a juror privately (see People v Kelly, 16 NY3d at 804; People v Jackson, 103 AD3d 1245, 1246 [2013], lv denied 21 NY3d 944 [2013]) or permit the jurors to take a smoking break (see People v Manzo, 233 AD2d 529, 529-530 [1996]). Here, however, juror No. 4 was absent from the jury room for slightly more than one hour on the afternoon of April 5, 2011 and, as evidenced by (1) the foreperson’s recitation of the manner in which the issue regarding juror No. 12 arose and the ensuing “heated” discussion among the jurors, and (2) juror No. 4’s professed lack of knowledge of this issue or the resulting discussion, it is readily apparent that the jurors continued their deliberations during this period of time (compare People v Speed, 226 AD2d 1090, 1091 [1996], lv denied 88 NY2d 969 [1996]). Any assertion that the jury’s “discussion” of juror No. 12’s disclosure did not arise in the context of the jury’s “deliberations” is belied by the record, which reflects that this issue arose while the jurors “were talking about the facts” of this case and their obligation “to make a determination . . . based on what [evidence] was presented.” Indeed, it was in the course of that discussion that juror No. 12 tried “to explain . . . that people can say something about you that is not necessarily true,” noting the corresponding need “to decide on why they’re saying it” and providing an example from his own life. As the crux of this discussion — of which juror No. 4 professed no knowledge — plainly implicated credibility issues and, arguably, a witness’s motivation to testify in a particular manner, it cannot be deemed anything other than deliberations among what clearly was less than 12 members of the jury.[3] Accordingly, defendant is entitled to a new trial. In light of this decision, we need not address the remaining arguments raised by defendant on appeal.
Rose, J.E, Spain and Garry, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Schenectady County for a new trial.

. To the extent that the testimony offered by the investigating detectives and the sexual assault nurse examiner disclosed certain details of the crime, we find the admission of such testimony to be harmless.

. Juror No. 4 variously stated, “I don’t feel I [can] make a decision either way” and “I cannot make a decision,” prompting County Court to observe, “she doesn’t have it in her to make a judgment.”

. Moreover, the record suggests that the jury may have been deliberating in the absence of juror No. 12 as well. As noted previously, when the jury foreperson initially brought the concerns regarding juror No. 12 to County Court’s attention, County Court inquired, “And you’ve had discussions with the other jurors in [juror No. 12’s] absence or not?”, to which the foreperson replied, “Yes.”