People v Harris (2018 NY Slip Op 04396)





People v Harris


2018 NY Slip Op 04396


Decided on June 14, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

108180

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
LYMAN G. HARRIS, Appellant.

Calendar Date: May 4, 2018

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Rumsey, JJ.


D.J. & J.A. Cirando, Esqs., Syracuse (John A. Cirando of counsel), for appellant.
William G. Gabor, District Attorney, Wampsville (J. Scott Porter of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Madison County (McDermott, J.), rendered August 26, 2015, upon a verdict convicting defendant of the crimes of burglary in the first degree (two counts), criminal use of a firearm in the first degree, sexual abuse in the first degree, stalking in the third degree, unlawful imprisonment in the first degree, menacing in the second degree and harassment in the second degree.
On the evening of May 15, 2014, defendant drove to the home of his ex-wife (hereinafter the victim), forced his way into her home and used duct tape to tie her to a support pole in the basement. He left the victim in the basement briefly before returning with a shotgun, ammunition, a can of antifreeze and a
cooler of beer. Defendant then gave the victim the choice of being shot or drinking antifreeze, informing her that after he killed her, he was going to kill himself. Defendant, who was drinking and in an emotional state, slapped and sexually assaulted the victim while she was tied to the support pole. After some time, the victim was successful in calming defendant down, and he eventually cut her loose from the pole. In an effort to keep defendant calm and avoid being hurt, the victim continued to talk to defendant, danced with him and permitted him to spend the night. In the morning, defendant apologized for his actions, and the victim responded that she would not tell anyone about what had happened so long as defendant would not contact her anymore. Defendant agreed.
Nevertheless, defendant continued to contact the victim by phone, text message and [*2]mail. After the victim resisted his efforts to communicate, defendant sent the victim text messages threatening her if she stopped communicating with him. The victim thereafter contacted the police and, at their direction, she placed a recorded controlled call to defendant. Defendant was subsequently arrested, and a search warrant executed at his home resulted in the recovery of, among other things, three shotguns, ammunition and a can of antifreeze. Defendant's fingerprints were found on duct tape recovered from the victim's basement.
Defendant was charged by indictment with various crimes stemming from these events and, following a jury trial, he was convicted of two counts of burglary in the first degree and one count each of criminal use of a firearm in the first degree, sexual abuse in the first degree, stalking in the third degree, unlawful imprisonment in the first degree, menacing in the second degree and harassment in the second degree. County Court sentenced him to an aggregate prison term of 15&frac13; to 18 years followed by three years of postrelease supervision. Defendant appeals.
Defendant initially contends that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. His challenge to the legal sufficiency of the evidence supporting his convictions was preserved only with regard to the count of the indictment charging him with burglary in the first degree based upon his use of antifreeze as a dangerous instrument (see People v Conklin, 158 AD3d 973, 974 [2018]). Nonetheless, in the context of our weight of the evidence review, "we necessarily determine whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Montford, 145 AD3d 1344, 1345 [2016], lv denied 29 NY3d 999 [2017]; see People v Myers, 160 AD3d 1029, 1030 [2018]; People v Rosario, 157 AD3d 988, 989 [2018]).
With regard to defendant's conviction for burglary in the first degree based upon his use of antifreeze as a dangerous instrument (see Penal Law § 140.30 [3]), defendant claims that there was no evidence proving that the contents of the can of antifreeze were "capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]). However, the jury could have reasonably concluded, from its own knowledge regarding the properties of antifreeze, that such substance was readily capable of causing serious physical injury or death if consumed (see People v Buie, 67 AD3d 432, 433 [2009], lv denied 13 NY3d 937 [2010]). Further, the victim testified that she did not give defendant permission to enter her home either the first time when he forcibly entered and dragged her into the basement or the second time when he entered bringing the gun and the antifreeze. Viewing the evidence in the light most favorable to the People, we find that a rational jury could have found the elements of this crime proven beyond a reasonable doubt (see Penal Law § 140.30 [3]; People v Elwood, 80 AD3d 988, 989-990 [2011], lv denied 16 NY3d 858 [2011]; People v Johnson, 20 AD3d 808, 811 [2005], lv denied 5 NY3d 853 [2005]; People v Hargett, 11 AD3d 812, 814 [2004], lv denied 4 NY3d 744 [2004]).
Defendant's challenge to the weight of the evidence supporting his convictions rests largely upon his claim that the victim's testimony was incredible. Yet, the victim's account of the events was corroborated by physical evidence, as well as defendant's own statements in the controlled call and in his text messages to the victim. As to defendant's entry into her home, the victim explained that she heard the doorbell ring and opened the door a few inches to see who it was, at which point defendant pushed the door open the rest of the way, forced his way into her home and then grabbed her and carried her down a hallway. The victim testified that she tried to hold onto a coat rack at the top of the basement stairs, but that the rack came off the wall. A police officer who responded to the victim's house photographed the marks on the wall and the coat rack that had been ripped off, and such photographs were admitted into evidence. Defendant's statements and text messages corroborate the victim's testimony that she was tied up in the basement and given a choice between being shot or drinking antifreeze. They also show [*3]defendant's jealousy of the victim's new boyfriend and his unwillingness to let go of his relationship with the victim. At the end of the controlled phone call, defendant told the victim that their next contact would be their last and that he would not live without her. Simply put, the jury chose to credit the victim's account of the events that transpired, and our review of the record confirms that her testimony was neither "contradicted by any compelling evidence nor so unworthy of belief as to be incredible as a matter of law" (People v Cridelle, 112 AD3d 1141, 1143 [2013] [internal quotation marks and citations omitted]; see People v Davis, 149 AD3d 1246, 1247 [2017], lv denied 29 NY3d 1125 [2017]; People v Brabham, 126 AD3d 1040, 1043 [2015], lvs denied 15 NY3d 1160, 1171 [2015]). Even if an acquittal on any of the counts would not have been unreasonable, "viewing the evidence in a neutral light and according deference to the jury's superior opportunity to assess witness credibility, we are satisfied that the verdict was in accord with the weight of the evidence" (People v Warrington, 155 AD3d 1450, 1452 [2017] [internal quotation marks and citations omitted]; see People v Bleakley, 69 NY2d 490, 495 [1987]; People v Rosario, 157 AD3d at 991; People v Elwood, 80 AD3d at 990; People v Hargett, 11 AD3d at 814).
We agree that it was error for County Court to admit into evidence the three shotguns recovered from defendant's residence, as the victim testified to defendant displaying only one shotgun during the incident (see People v Martin, 8 AD3d 883, 887 [2004], lv denied 3 NY3d 677 [2004]; People v Cox, 210 AD2d 497, 498 [1994], lv denied 85 NY2d 907 [1995]). We further find, however, that such error was harmless beyond a reasonable doubt (see People v Crimmins, 36 NY2d 230, 237 [1975]; People v Cox, 210 AD2d at 498). In light of the overwhelming evidence of defendant's guilt, "there is no reasonable possibility that any error permitting the shotgun[s] . . . to be admitted into evidence in any way contributed to defendant's convictions" (People v Roach, 119 AD3d 1070, 1072 [2014] [internal quotation marks, ellipsis, brackets and citation omitted], lv denied 24 NY3d 1221 [2015]; see People v Moon, 279 AD2d 804, 806 [2001], lv denied 96 NY2d 803 [2001]; People v Cox, 210 AD2d at 498; People v Wells, 143 AD2d 708, 709 [1988], lv denied 73 NY2d 861 [1988]).
By failing to object at trial to the comments he now challenges, defendant failed to preserve for our review his arguments regarding the prosecutor's summation (see People v Jackson, 160 AD3d 1125, 1129 [2018]; People v Wynn, 149 AD3d 1252, 1255 [2017], lv denied 29 NY3d 1136 [2017]). Defendant alternatively argues that he was deprived of the effective assistance of counsel on the basis of counsel's failure to object to the prosecutor's summation. We disagree. Nearly all of the challenged remarks "constituted fair comment on the evidence or a reasonable response to the defense summation" (People v Kerley, 154 AD3d 1074, 1076 [2017], lv denied 30 NY3d 1106 [2018]). While two comments could arguably be viewed as an improper attempt to shift the burden of proof to defendant, the record reflects that the prosecutor reminded the jury that the People alone carried the burden of proving defendant's guilt. More to the point, these isolated comments "'did not rise to the flagrant and pervasive level of misconduct which would deprive defendant of due process or a fair trial'" (id., quoting People v Heiserman, 127 AD3d 1422, 1424 [2015]; see People v Ressy, 141 AD3d 839, 842-842 [2016], lvs denied 28 NY3d 1030 [2016]; People v Wlasiuk, 136 AD3d 1101, 1103-1104 [2016], lv denied 27 NY3d 1009 [2016]). Considering the totality of counsel's performance, we find that defendant received meaningful representation (see People v Warren, 160 AD3d 1132, 1137 [2018]; People v Kerley, 154 AD3d at 1076; People v Wynn, 149 AD3d at 1256).
Finally, we are unpersuaded that defendant's sentence, which was significantly less than the maximum permissible sentence, was harsh or excessive. The record reflects that County Court took into account defendant's age, health and lack of criminal history, while also acknowledging the violent nature of defendant's conduct and the devastating effect that the [*4]offenses had on the victim. We discern no abuse of discretion or extraordinary circumstances warranting a reduction of defendant's sentence in the interest of justice (see People v Willard, 159 AD3d 1228, 1230 [2018]; People v Hull, 125 AD3d 1099, 1102 [2015], affd 27 NY3d 1056 [2016]).
We have considered defendant's remaining contentions and find them to be without merit.
Garry, P.J., Egan Jr., Lynch and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.