People v Ryan (2019 NY Slip Op 07648)





People v Ryan


2019 NY Slip Op 07648


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

109024

[*1]The People of the State of New York, Respondent,
v
Vincent Ryan Jr., Appellant.

Calendar Date: September 6, 2019

Before: Garry, P.J., Egan Jr., Lynch and Pritzker, JJ.


Sandra M. Colatosti, Albany, for appellant.
James R. Farrell, District Attorney, Monticello (Kristen L. Hackett of counsel), for respondent.



Egan Jr., J.
Appeal from a judgment of the Supreme Court (Schick, J.), rendered October 17, 2016 in Sullivan County, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree, criminal mischief in the second degree and aggravated criminal contempt.
On the afternoon of May 28, 2015, defendant's mother (hereinafter the victim) was sitting at a table in her home when defendant pulled up in a Chevy Tahoe, backed up the driveway and crashed into the house, pinning her underneath a portion of the wall of the house. Defendant then exited the Tahoe, walked into the house, took off his sunglasses, threw them at the victim and fled the scene on foot. The victim subsequently extricated herself from the debris and, after calling 911, was air-lifted to a hospital where she was treated for, among other things, a compound leg fracture, a fractured breast bone and a large laceration on her head. Soon thereafter, defendant was located and arrested a short distance from the victim's house.
In October 2015, defendant was charged in a four-count indictment with the crimes of attempted murder in the second degree, assault in the first degree, criminal mischief in the second degree and aggravated criminal contempt. Following a jury trial before County Court (LaBuda, J.), defendant was convicted as charged. He was thereafter sentenced before Supreme Court (Schick, J.) to a prison term of 25 years, to be followed by five years of postrelease supervision, for his conviction of attempted murder in the second degree and to lesser concurrent prison terms on the remaining three convictions. Defendant appeals.
Defendant contends that County Court abused its discretion when it discharged a sworn juror, over defendant's objection, based upon the court's determination that the juror was grossly unqualified to serve. We disagree. As relevant here, "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case . . ., the court must discharge such juror" (CPL 270.35 [1]; see People v Harris, 99 NY2d 202, 212 [2002]; People v Cridelle, 112 AD3d 1141, 1146 [2013]). "A juror will be deemed to be grossly unqualified to serve only when, after conducting a probing, tactful inquiry into the specific circumstances, it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict" (People v Reichel, 110 AD3d 1356, 1358 [2013] [internal quotation marks, brackets and citations omitted], lv denied 22 NY3d 1090 [2014]; accord People v Colburn, 123 AD3d 1292, 1295 [2014], lv denied 25 NY3d 950 [2015]; see People v Buford, 69 NY2d 290, 298-299 [1987]).
Here, jury selection commenced on April 11, 2016 and the jury was sworn in that afternoon. The following morning, before trial began, juror No. 8 informed the court that, upon overnight reflection, he now had reservations about his ability to continue serving as a juror. Specifically, juror No. 8 indicated that his "stomach [was] going haywire," that he was concerned about the effect that serving on the jury might have on his business and, based upon having been previously falsely accused of a crime, he did not think that he could be fair and impartial to both sides. County Court provided the parties with an opportunity to question juror No. 8, wherein he reiterated the fact that he did not think he could be fair and impartial as a juror. Upon further inquiry by the parties into whether he could put aside his concerns and render a fair and impartial verdict, juror No. 8's responses were qualified and equivocal, with him indicating that he "would do [his] best" and he could "try" to put his concerns aside but that he could not "guarantee [it] with certainty." Upon our review of the record, we find that juror No. 8 adequately demonstrated that he "possesse[d] a state of mind which would prevent the rendering of an impartial verdict" and, therefore, County Court appropriately discharged him on the ground that he was grossly unqualified to serve (People v Guy, 93 AD3d 877, 878 [2012] [internal quotation marks and citations omitted], lv denied 19 NY3d 961 [2012]; see CPL 270.35 [1]; People v Spencer, 29 NY3d at 310; People v Cridelle, 112 AD3d at 1146; People v Lapage, 57 AD3d 1233, 1235-1236 [2008]).
Defendant was not denied his right to a fair trial as a result of the People publishing to the jury certain statements that he made in his recorded police interview regarding his prior incarceration and probationary status. During the testimony of David Meyers, an investigator for the State Police, the People introduced a video of defendant's police interview wherein he references his prior incarceration and probationary status stemming from a previous instance of criminal mischief against his parents. Although the parties had previously agreed to redact these portions of the video, a portion of the video referencing same was nevertheless inadvertently published to the jury. Although defendant promptly objected to this inadvertent disclosure and County Court thereafter agreed to provide a curative instruction with regard thereto, the court failed to actually provide any curative instruction and no such instruction was subsequently included in the court's charge to the jury. Notwithstanding County Court's error, we find that, given the overwhelming evidence of defendant's guilt, there is no "reasonable possibility that [this] error might have contributed to defendant's conviction," and, therefore, under the circumstances, we find such error to be harmless (People v Crimmins, 36 NY2d 230, 237 [1975]; see People v Colvin, 37 AD3d 856, 858 [2007], lv denied 8 NY3d 944 [2007]; People v Wright, 5 AD3d 873, 876-877 [2004], lv denied 3 NY3d 651 [2004]).
Defendant's further challenge to the amount of restitution imposed is unpreserved for appellate review as he failed to either request a restitution hearing or otherwise challenge the amount of restitution during the sentencing proceeding (see People v Horne, 97 NY2d 404, 414 n 3 [2002]; People v Johnson, 151 AD3d 1462, 1466 [2017], lv denied 30 NY3d 1106 [2018]; People v Shannon, 139 AD3d 1250, 1250 [2016], lv denied 28 NY3d 974 [2016]). Finally, although defendant does not have a lengthy criminal history, given the serious injuries that were sustained by the victim, we find no extraordinary circumstances or abuse of discretion that would justify a reduction of defendant's sentence in the interest of justice (see People v Zavaro, 148 AD3d 1358, 1359 [2017]; People v Berry, 306 AD2d 623, 624-625 [2003], lv denied 100 NY2d 618 [2003]).
Garry, P.J., Lynch and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.